| |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1**<br>**PORZIO, BROMBERG & NEWMAN, P.C.**<br>100 Southgate Parkway<br>P.O. Box 1997<br>Morristown, New Jersey 07962<br>(973) 538-4006<br>(973) 538-5146 Facsimile<br>Warren J. Martin Jr., Esq. (wjmartin@pbnlaw.com)<br>Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)<br>Christopher P. Mazza, Esq. (cpmazza@pbnlaw.com)<br><br>*Counsel to Debtor and Debtor-In-Possession* | |
| In re:<br><br>FLAGSHIP RESORT DEVELOPMENT CORPORATION,[1]<br><br>Debtor. | Chapter: 11<br><br>Case No.: 25-15047 (JNP) |

**REPLY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT ON AN INTERIM BASIS; (II) SCHEDULING A COMBINED HEARING ON FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN CONFIRMATION AND DEADLINES RELATED THERETO; (III) APPROVING THE SOLICITATION, NOTICE, AND TABULATION PROCEDURES AND THE FORMS RELATED THERETO; AND (IV) GRANTING RELATED RELIEF**

Flagship Resort Development Corporation, the above-captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned counsel, hereby submits this reply (the "Reply") in support of the *Debtor's Motion for Entry of an Order (I) Approving the Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice, and Tabulation Procedures and the Forms Related Thereto; and (IV)*

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is: Flagship Resort Development Corporation, a New Jersey corporation (1067). The location of the Debtor's service address is: 60 North Maine Avenue Atlantic City, NJ 08401.

8234262

*Granting Related Relief* [Docket No. 176] (the "Motion")[2] and in response to the objection [Docket No. 225] (the "Objection") filed by the United States Trustee (the "U.S. Trustee").

## PRELIMINARY STATEMENT

1. Since commencing this Chapter 11 Case, the Debtor has worked with its professionals and major stakeholders to push the case forward expeditiously to preserve value for the Estate's creditors and achieve a value-maximizing sale. As a result of these efforts, the Debtor will be ready to move forward with seeking approval of a Sale on August 8, 2025, just shy of three months from the Petition Date. With the finish line in sight, the Debtor continues to engage in ongoing discussions with its Lenders, the Committee, and the U.S. Trustee to keep this Chapter 11 Case on a largely consensual path forward.

2. As of the time of filing this Reply,[3] the Debtor's sole objector to its Disclosure Statement is the U.S. Trustee, whose Objection principally revolves around the Third-Party Release and Injunction provisions in the Debtor's Plan. Put simply, the U.S. Trustee's Objection is best categorized as a confirmation objection that is not appropriately addressed at this juncture. In any event, the U.S. Trustee's position reflects an incorrect application of the relevant case law and is unsupported by precedent in this district. Accordingly, the Objection should be overruled.

---

[2] Defined terms used but not defined herein shall have the meanings ascribed to them in the Motion, Disclosure Statement, or the Plan, as applicable.

[3] As set forth in the letter filed at Docket No. 231, the Debtor has extended the Committee's objection deadline to the Motion to August 1, 2025. The deadline for the Debtor to reply to an objection filed by the Committee, if any, is extended through and including August 3, 2025, at 12:00 pm EST.

8234262

**REPLY**

I. **The Disclosure Statement Contains Adequate Information Under Section 1125 of the Bankruptcy Code.**

3. Pursuant to section 1125 of the Bankruptcy Code, a disclosure statement must provide holders of claims and interests entitled to vote with "adequate information" regarding the plan. Section 1125(a)(1) of the Bankruptcy Code states, in relevant part:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

4. "Adequate information" has been interpreted as information that is "reasonably practicable" to permit an "informed judgment" by creditors voting on a plan. *In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. D.N.J. 2022). The adequacy of information in a disclosure statement is determined on a case-by-case basis. *In re Lower Bucks Hosp.*, 488 B.R. 303, 317 (E.D. Pa. 2013), aff'd, 571 F. App'x 139 (3d Cir. 2014) (holding that what constitutes "adequate information" is "determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court"); *see also In re Oneida Motor Freight, Inc.*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case.").

5. As demonstrated in the table below and consistent with Third Circuit precedent, the Disclosure Statement contains the categories of information necessary for voting creditors to make an informed judgment to accept or reject the Plan.

8234262

| Category | Description | Location in Disclosure Statement |
|---|---|---|
| Debtor's Background | A description and summary of the Debtor's corporate history, structure, business operations, and prepetition capital structure and indebtedness. | Article II |
| Debtor's Prepetition Restructuring Efforts | An overview of Debtor's prepetition restructuring efforts. | Article II |
| Events Leading to the Chapter 11 Case | An overview of the events leading to the Chapter 11 Case. | Article II |
| Pleadings Filed in the Chapter 11 Case | An overview of the significant pleadings filed in the Chapter 11 Case and certain relief granted by the Bankruptcy Court in connection therewith. | Article III |
| Treatment of Claims and Interests | An overview of the classification and treatment of Claims and Interests under the Plan, including identification of the holders of Claims entitled to vote on the Plan, the procedures for voting, and projected recoveries. | Article IV |
| Means for Implementation of the Plan | An overview of the means of implementing the provisions of the Plan. | Article V |
| Methods of Distribution | An overview of the method of distribution of any recoveries that may be available to holders of Claims pursuant to the Plan, the process for resolving Disputed Claims, and other significant aspects of the Plan. | Article VI |
| Releases | An overview of the releases contemplated by the Plan that are integral to the overall settlement of Claims pursuant to the Plan. | Article VII |
| Tax Consequences | An overview of certain United States federal income tax consequences of the Plan | Article XIII |
| Risk Factors | An overview of certain risk factors that holders of Claims should consider before voting to accept or reject the Plan and information regarding alternatives to Confirmation of the Plan | Article XIV |

6. Further to information regarding third party releases, the definition of Released Parties "means collectively, and in each case solely in its capacity as such: (a) the Debtor; (b) the

DIP Agent; (c) BOC, in its capacity as DIP Lender; (d) Colebrook, in its capacity as DIP Lender (e) BOC, in its capacity as Receivables Lender (f) Colebrook, in its capacity as Receivables Lender, (g) the Committee and each of its members; and (h) each Related Party of each Entity in clause (a) through this clause (g), but not including any Excluded Party[4]." *See* Plan, Art I.A(118). A "Related Party" is specifically identified as including the following categories of persons: "each of, and in each case in its capacity as such, current and former directors, managers, officers, committee members, board members of the Debtor, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; provided, however, that notwithstanding the foregoing or anything herein to the contrary, no person that is not a Released Party shall be a Related Party under the Plan." *See* Plan, Art. I.A(117). It is unclear how these definitions do not meet the adequate information standard in this Circuit.

7.  Additionally, the scope of a "Releasing Party" is limited insofar as Releasing Parties cannot bind their "Related Parties" unless they are legally entitled to bind such Related Party under applicable law. *See* Plan, Art. VII.D(2). Any Causes of Action and claims to be

---

[4] "Excluded Party" means each of the following: (i) Bruce Kaye, (ii) Deborah Kaye, (iii) the Deborah Kaye Revocable Trust, (iv) the Bruce Kaye Revocable Trust, (v) the Bruce Kaye Dynasty Trust, (vi) Jason Kaye, (vii) AEGIS Trust Company, and (viii) Robert Lesser. *See* Plan, Art. I.(A)(65).

released are also similarly limited, insofar as they must be based on or relate to the Debtor, the Estate, the Chapter 11 Case, the sale of the Debtor's Assets, or other transactions or events giving rise to a Claim or Interest under the Plan.[5] The Disclosure Statement also includes a description of the consideration being provided in exchange for the releases—that is, the Released Parties' contributions to implementing the Plan. *See* Plan, Art. VI(D.). This approach as to the description and scope of releases is frequently approved by bankruptcy courts in this district. *See e.g. In re Sam Ash*, No. 24-14727 (SLM), Docket No. 460 (Bankr. D.N.J. Aug. 15, 2024); *In re Invitae Corporation,* No. 24-11362 (MBK), Docket No. 913 (Bankr. D.N.J. Aug. 2, 2024); *In re Careismatic Brands, LLC,* No. 24-10561 (VFP), Docket No. 775, (Bankr. D.N.J. May 30, 2024); *In re Cyxtera Techs., Inc.,* No. 23 14853 (JKS), Docket No. 718 (Bankr D.N.J. Nov. 17, 2023). Accordingly, the Disclosure Statement contains adequate information sufficient for eligible voters to make an informed decision whether to accept or reject the Plan.

## II. The Objection Should Be Overruled to the Extent it is a Preliminary Confirmation Objection.

4. The remainder of the U.S. Trustee's Objection constitutes preliminary Confirmation objections. These objections are premature and do not present any basis for the Court to delay interim approval of the Disclosure Statement and solicitation of the Plan. The Objection should be overruled on that basis. Disputed issues related to confirmation are not relevant to assessing whether a disclosure statement contains "adequate information." *See, e.g.,*

---

[5] As set forth below, the Debtor intends to supplement the Disclosure Statement to include further information on pre- and post-petition investigations into potential causes of action. The Debtor believes that this satisfies the applicable adequate information standard.

8234262

*In re Quigley Co., Inc.,* 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (approving the disclosure statement while acknowledging that the objectors raised "several confirmation issues").

5. Courts frequently hold that a disclosure statement that adequately describes the chapter 11 plan at issue should be approved unless a disclosure statement "describes a plan of reorganization which is so fatally flawed that confirmation is impossible." *See In re Cardinal Congregate I,* 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (overruling objections to issues including treatment of claims and feasibility); *see also In re Unichem Corp.,* 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) (holding courts should disapprove of the adequacy of a disclosure statement on confirmability grounds only "where it is readily apparent that the plan accompanying the disclosure statement could never be legally confirmed"); *see also* 7 Collier on Bankruptcy ¶1125.03 (16th ed. 2023) ("At disclosure statement hearings, courts should refuse to hear issues that are confirmation rather than disclosure issues, such as classification of claims, feasibility . . . or whether a plan is fair and equitable."). "A plan is patently unconfirmable where (1) confirmation defects [cannot be] overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *In re Am. Cap. Equip., LLC,* 688 F.3d 145, 154-55 (3d Cir. 2012); *see also In re Phoenix Petrol.,* 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) (finding that unless "the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible" the court should approve a disclosure statement that otherwise adequately describes the chapter 11 plan at issue).

6. The Objection states that the Plan is not confirmable because the Third Party Releases contained in the Plan are non-consensual and the Plan contains an exculpation that allegedly contravenes Third Circuit precedent. Notwithstanding that these assertions are in direct contradiction with current jurisprudence on third-party releases in this jurisdiction, none of these

8234262

issues would render the Plan "patently unconfirmable." Moreover, because the Debtor is only seeking approval of the Disclosure Statement on a conditional basis, the U.S. Trustee can raise these objections at the appropriate time in connection with confirmation. The Debtor is prepared to address each issue at such time to the extent it does not reach a resolution with the U.S. Trustee. Nevertheless, the Debtor addresses the Objection herein but maintains that, to the extent it raises Plan-related issues or argues that the Plan is patently unconfirmable, the Objection should be overruled.

    A.    <u>The Releases in the Plan are Reasonable, Consensual, and Permissible.</u>

    7.    Article VII.D of the Plan provides for certain releases under the Plan that the U.S. Trustee argues are non-consensual, despite the fact that similarly-structured third party releases are regularly approved in this Court in the aftermath of *Purdue*. *Harrington v. Purdue Pharma L. P.,* 603 U.S. 204 (2024).

    8.    The Releases in the Plan are appropriately tailored and consensual. The Plan provides for a typical "opt out" mechanism for the Consensual Third-Party Releases, including to Non-Voting Classes, which is fully disclosed in the Plan. As previously highlighted, Article VIII of the Disclosure Statement provides a detailed description of the Consensual Third-Party Releases under the Plan. Accordingly, all Holders of Claims and Interests, including Holders of Claims and Interests in the Non-Voting Classes, will receive broad, actual and constructive notice of the Releases as well as an opportunity to decide whether to opt out of the Releases.

    9.    Courts in the Third Circuit routinely approve such release provisions if, as here, they are consensual and appropriately tailored. *See, e.g., In re Cyxtera Techs., Inc.* No. 23-14853 (JKS) (Bankr. D.N.J. Nov. 17, 2023); *In re Indianapolis Downs,* 486 B.R. 286, 304–05 (Bankr. D. Del. 2013) (approving third-party release that applied to unimpaired holders of claims deemed to accept the plan as consensual where parties received detailed instructions on how to opt out

8234262

and had the opportunity to do so). The determination as to whether a third-party release is consensual depends on the particular circumstances of each case. *See In re Indianapolis Downs*, 486 B.R. at 305. For a third-party release to be consensual, affirmative consent is not required. Rather, a third-party release is consensual against non-debtor parties where the releasing parties have the opportunity to opt out of the release but fail to do so. *See In re Indianapolis Downs*, 486 B.R. at 305–06; *U.S. Bank*, 426 B.R. at 144.

10. *Purdue* does not change this analysis. The majority opinion in that case specifically stated that the decision was narrowly confined to the question presented. *Purdue Pharma*, at 207-8. The U.S. Trustee's assertions to the contrary ignore the overwhelming support in the Third Circuit both pre- and post-*Purdue* that releases that use an opt-out mechanism are consensual. *See In re Sam Ash*, No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) (confirming plan post-*Purdue* over objection of U.S. Trustee which included an opt-out mechanism for consensual third-party release); *In re Invitae Corporation,* No. 24-11362 (MBK) (Bankr. D.N.J. Aug. 2, 2024) (same); *In re Cyxtera Techs., Inc.,* No. 23 14853 (JKS) (Bankr D.N.J. Nov. 17, 2023) (confirming plan pre-*Purdue* over objection of U.S. Trustee which included an opt-out mechanism for consensual third-party release); *In re Bed Bath & Beyond, Inc.,* No. 23-13359-VFP (MBK), Docket No. 2172 (Bankr. D.N.J. Sept. 14, 2023) (confirming plan pre-*Purdue* finding that holders of claims or interests who fail to affirmatively opt out, whether rejecting the plan, deemed to reject, or abstain are deemed to consent to the releases).

11. In support of its position, the U.S. Trustee primarily relies on a non-binding decision that is inconsistent with *Purdue* and distinguishable. In *Smallhold*, Judge Goldblatt concluded that a consensual third-party release requires some level of affirmative step to indicate consent, *i.e.*, returning a ballot. There, where non-voting creditors were only provided a form of

8234262

notice of the confirmation hearing, were not solicited, and were not given the opportunity to "opt-out," the court found that such creditors did not affirmatively express consent to the releases. *In re Smallhold, Inc.*, 665 B.R. 704, 723 (Bankr. D. Del. 2024). Here, the Debtor plans to provide all Non-Voting Classes, both Impaired and Unimpaired, the opportunity to "Opt-Out" via service of an Opt-Out Form.

B. The Plan's Exculpation Provision is Appropriate

12. The U.S. Trustee also objects to the Plan's Exculpation provision, arguing that it contravenes precedent because it is not limited to estate fiduciaries by including the Post-Effective Date Debtor and the Committee. However, courts regularly approve similar provisions so long as they are limited to claims not involving a criminal act, actual fraud, willful misconduct, or gross negligence. *See Sam Ash*, No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) (confirming plan that included post-effective date debtors and the creditors' committee); *In re Wash. Mut., Inc.,* 442 B.R. at 350–51 (holding that an exculpation clause that encompassed "the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the [c]ommittees and their members, and the [d]ebtors' directors and officers" was appropriate); *In re BlockFi Inc.,* No. 22-19361 (MBK) (Bankr. D.N.J. Oct. 3, 2023) (confirming plan where exculpation provision covered the debtors and wind down debtors, the creditors' committee, and related parties, including current and former control persons and professionals); *In re Bed Bath & Beyond Inc.,* No. 23-13359-VFP (MBK) (Bankr. D.N.J. Sept. 14, 2023) (same).

13. Here, same as the Release provisions, the Exculpation is limited in scope to Causes of Action or claims related to, in connection with, or arising out of the Chapter 11 Case, including the implementation of the Plan and distribution of Property under the Plan. The Exculpation also specifically "does not exculpate any Claim relating to any post-Effective Date obligations of any

8234262

party or Entity under the Plan, any Sale Transaction, or any document, instrument, or agreement (including the other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan." *See* Plan, Art. VII.C.

14. The Debtor is prepared to demonstrate at the Confirmation Hearing that the Exculpated Parties have participated "in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan", and they should be entitled to protection from exposure to any lawsuits related to same. As the Court will be required to determine that the Plan was proposed in good-faith, and that the solicitation procedures are appropriate and comply with all applicable laws, rules or regulations, it is not inconsistent with Third Circuit precedent nor is it uncommon for courts to make a finding that the Exculpated Parties participated in good faith. *See Sam Ash*, No. 24-14727 (SLM) (Bankr. D.N.J. Aug. 15, 2024) (approving nearly identical language regarding proposed exculpation and a finding of good faith for such parties).

15. Here, the Debtor will demonstrate at confirmation the it, along with its officers, directors, and professionals actively engaged in extensive negotiations regarding the Plan with the Committee and others in good faith. Additionally, as noted above, the Exculpation Provision is limited to acts during this Chapter 11 Case and does not extend beyond such time period.

C. Objections to Final Approval of the Disclosure Statement are Reserved.

16. Because the Debtor is only seeking conditional approval of the Disclosure Statement to allow for the most efficient and expeditious possible path to confirmation, all parties rights are reserved to challenge the adequacy of information in the Disclosure Statement through final approval at the Combined Hearing.

**III. The U.S. Trustee's Miscellaneous Objections to the Motion.**

17. The Debtor responds to the U.S. Trustee's miscellaneous objections as follows:

8234262

| Objection | Debtor's Response |
|---|---|
| The U.S. Trustee objects to the Disclosure Statement insofar as it believes further information should be provided about claims and causes of action that may be subject to the releases in the Plan. | The Debtor will provide further information regarding any claims and causes of action that may be subject to the Plan releases in a modified Disclosure Statement. |
| The U.S. Trustee objects to the original proposed timeline and proposes revised dates and deadlines. | The Debtor is in agreement and will provide a revised order with new dates and deadlines, subject to the Court's availability and approval at the hearing on the Motion. |
| The proposed Solicitation Procedures should provide a provision that the Debtor is not required to resend a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity whose Solicitation Package or any other document related to voting or confirmation of the Plan is returned as undeliverable by the postal service, unless the Debtor is provided with accurate addresses for such person or entity prior to the Voting Record Date. | The Debtor will incorporate this provision into the revised proposed order. |
| The proposed Solicitation Procedures should provide a provision concerning publication with a newspaper and a time share/real estate publication (to the extent one exists) concerning the Confirmation Hearing Notice. The Debtor should be required to submit the Confirmation Hearing Notice to the newspaper for publication within two (2) business days of entry of the Interim Approval and Procedures Order. | While the Debtor believes that publication on the Noticing Agent's webpage to be sufficient, the Debtor is investigating the cost of broader publication as requested by the U.S. Trustee. The Debtor will incorporate this provision and publish the Solicitation Procedures and Confirmation Hearing Notice as suggested provided the expense of doing so is not cost-prohibitive. |
| The proposed Solicitation Procedures should include a provision concerning the electronic online transmission of ballots through the online portal that provides that the encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Election Form submitted in this manner and the creditor's electronic signature will be deemed to be immediately legally valid and effective. Ballots and Opt-Out Election Forms submitted via the Balloting Portal or Opt-Out Portal, as applicable, shall be deemed to contain an original signature. | The Debtor will incorporate this provision into the revised proposed order. |

8234262

| | |
|---|---|
| The proposed Solicitation Procedures should include a provision that provides the following concerning the submission of ballots and/or opt-out forms that have defects or irregularities: "To assist in the solicitation process, the Balloting Agent is authorized to contact parties that submit incomplete or otherwise deficient Ballots to make a reasonable effort to cure such deficiencies, provided that, neither the Debtor, Balloting Agent, nor any other person or entity shall be under any duty to notify any creditors of any defects or irregularities with respect to the deliveries of Ballots, and neither the Debtor, Balloting Agent, nor any other party shall be liable for failure to provide such notification. Delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived, unless the Court directs otherwise." | The Debtor will incorporate this provision into the revised proposed order. |
| Paragraph 27 of the proposed Interim Approval and Procedures Order should be revised as follows: "The Debtor is hereby authorized to make non-substantive, nonmaterial, or conforming changes to the Disclosure Statement, Plan, and any related documents without further order of the Court prior to mailing the Solicitation Packages, including any changes necessary to remedy typographical or grammatical errors; provided however that counsel to the Committee and the U.S. Trustee shall be provided notice of any non-typographical and grammatical changes." | The Debtor will incorporate this provision into the revised proposed order. |

8234262

## **CONCLUSION**

For the foregoing reasons, the Objection should be overruled, and the Disclosure Statement should be approved on a conditional basis as satisfying the requirements of section 1125 of the Bankruptcy Code.

Dated: July 31, 2025　　　　　　　　　**PORZIO, BROMBERG & NEWMAN, P.C.**

　　　　　　　　　　　　　　　　　　By: */s/ Warren J. Martin Jr.*
　　　　　　　　　　　　　　　　　　　　Warren J. Martin Jr., Esq.
　　　　　　　　　　　　　　　　　　　　Rachel A. Parisi, Esq.
　　　　　　　　　　　　　　　　　　　　Christopher P. Mazza, Esq.
　　　　　　　　　　　　　　　　　　　　100 Southgate Parkway
　　　　　　　　　　　　　　　　　　　　Morristown, NJ 07962-1997
　　　　　　　　　　　　　　　　　　　　(973) 538-4006
　　　　　　　　　　　　　　　　　　　　wjmartin@pbnlaw.com
　　　　　　　　　　　　　　　　　　　　raparisi@pbnlaw.com
　　　　　　　　　　　　　　　　　　　　cpmazza@pbnlaw.com

　　　　　　　　　　　　　　　　　　　　*Counsel to the Debtor and Debtor-in-Possession, Flagship Resort Development Corporation*

8234262