UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin, Jr., Esq. wjmartin@pbnlaw.com)
Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)
Christopher P. Mazza, Esq. (cpmazza@pbnlaw.com)

*Counsel to Debtor and Debtor-In-Possession*

| | |
|---|---|
| In re: | Chapter: 11 |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION,[1] | Case No.: 25-15047 (JNP) |
| Debtor. | |

Order Filed on October 2, 2025
by Clerk
U.S. Bankruptcy Court
District of New Jersey

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The relief set forth on the following pages, numbered two (2) through fifty-seven (57), is

hereby **ORDERED.**

**DATED: October 2, 2025**

Honorable Jerrold N. Poslusny, Jr.
United States Bankruptcy Court

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is: Flagship Resort Development Corporation, a New Jersey corporation (1067).  The location of the Debtor's service address is: 60 North Maine Avenue, Atlantic City, NJ 08401.

(Page | 2)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

The above-captioned debtor and debtor in possession (the "<u>Debtor</u>") having:

a.  filed, on July 1, 2025, the *Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 175];

b.  filed, on July 1, 2025, the *Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 174];

c.  filed, on August 8, 2025, the *First Amended Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 261];

d.  filed, on August 9, 2025, the *Second Amended Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 272] (as further modified, supplemented, and amended, the "<u>Disclosure Statement</u>");

e.  filed, on August 9, 2025, the *First Amended Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 273];

f.  distributed solicitations materials on August 13, 2025 in accordance with the *Order (I) Approving the First Amended Disclosure Statement on an Interim Basis; (II) Scheduling a Combined Hearing on Final Approval of the Disclosure Statement and Plan Confirmation and Deadlines Related Thereto; (III) Approving the Solicitation, Notice and Tabulation Procedures and the Forms Related Thereto; and (IV) Granting Related Relief* [Docket No. 266] (the "<u>Confirmation Procedures Order</u>"), as set forth in the *Affidavit of Service of Solicitation Documents* (and any supplements thereto), dated September 4, 2025 [Docket No. 304] (the "<u>Solicitation Affidavit</u>") including, *inter alia*:

(i)  the *Notice of (A) Interim Approval of the First Amended Disclosure Statement and (B) Combined Hearing to Consider Final Approval of the Disclosure Statement and Confirmation of the Plan and the Objection Deadline Related Thereto* [Docket No. 287] (the "<u>Confirmation Hearing Notice</u>");

2

(Page | 3)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

(ii) the ballots for voting on the Plan (the "Ballot"), in the form approved in the Confirmation Procedures Order, to Holders of Claims and Interests and parties in interest, in compliance with the procedures contained in the Confirmation Procedures Order, title 11 of the United States Code (as amended, the "Bankruptcy Code"), and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and

(iii) non-voting status and opt-out forms, in the form approved in the Confirmation Procedures Order, to Holders of Claims and Interest and parties in interest, in unclassified and non-voting classes, in compliance with the procedures contained in the Confirmation Procedures Order;

g. filed, on August 29, 2025, the *Notice of Filing of Plan Supplement* [Docket No. 300] (the "Plan Supplement");

h. filed, on September 4, 2025, the *Notice of Non-Material Modifications to the First Amended Plan of Liquidation* [Docket No. 302];

i. filed, on September 8, 2025, the *Declaration of Stanislav Kesler of Kroll Restructuring Administration, LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the First Amended Plan of Liquidation of Flagship Resort Development Corporation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 310] (the "Voting Declaration");

j. filed, on September 9, 2025, the *Debtor's (I)Memorandum of Law in Support of (A) Final Approval of the Disclosure Statement and (B) Confirmation of the Plan, and (II) Omnibus Reply to Objections to Confirmation of the Plan* [Docket No. 312] (the "Confirmation Brief");

k. filed, on September 9, 2025, the *Declaration of Cherie Parks in Support of (I) Memorandum of Law in Support of (A) the Disclosure Statement and (B) Confirmation of the Plan, and (II) Omnibus Reply to Objections to Confirmation of the Plan* [Docket No. 313];

l. filed, on September 9, 2025, the *Declaration of John Madden in Support of (I) Memorandum of Law in Support of (A) the Disclosure Statement and (B) Confirmation of the Plan, and (II) Omnibus Reply to Objections to Confirmation of the Plan* [Docket No. 314];

8260639

(Page | 4)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

m.    filed, on September 10, 2025, the *Second Amended Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 318];

n.    filed, on September 11, 2025, the *Third Amended Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 321]; and

o.    filed contemporaneously with entry of this Confirmation Order, the *Fourth Amended Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code* (as further modified, supplemented, and amended, the "Plan"); [2]

The United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") having:

a.    entered the Confirmation Procedures Order on August 8, 2025;

b.    by the Confirmation Procedures Order, set the deadline to object to the Plan and final approval of the Disclosure Statement and the Plan voting deadline as September 5, 2025 at 4:00 p.m. (ET) for Holders of Claims entitled to vote;

c.    reviewed the Plan, the Disclosure Statement, the Plan Supplement, the Confirmation Brief, the Voting Declaration, and all other pleadings, exhibits, statements, affidavits, declarations, and comments regarding Confirmation of the Plan, including all objections, statements, and reservations of rights made with respect thereto, if any;

d.    heard the statements, arguments, and objections, if any, made by counsel and parties in interest in respect of final approval of the Disclosure Statement and Confirmation of the Plan;

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

8260639

(Page | 5)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

e.   considered all oral representations, testimony, documents, filings, and other evidence regarding final approval of the Disclosure Statement and Confirmation of the Plan;

f.   overruled any and all objections to final approval of the Disclosure Statement, and with respect to the Plan and Confirmation thereof, overruled in part and sustained in part certain objections and statements and reservations of rights not consensually resolved or withdrawn as reflected in this Confirmation Order and the Plan pursuant to the Court's oral ruling on September 18, 2025; and

g.   taken judicial notice of the papers and pleadings filed in this chapter 11 case (the "Chapter 11 Case").

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party in interest to object to final approval of the Disclosure Statement and Confirmation have been adequate and appropriate as to all entities affected or to be affected by the Disclosure Statement, the Plan, and the transactions contemplated thereby, that the legal and factual bases set forth in the documents filed in support of final approval of the Disclosure Statement and Confirmation and presented at the Confirmation Hearing, establish just cause for the relief granted herein, and that after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and orders consistent with its oral ruling on September 18, 2025:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.   Findings and Conclusions. The findings and conclusions set forth herein and on the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable

8260639

(Page | 6)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.) Approval of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. Venue was proper as of the Petition Date and is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Eligibility for Relief. The Debtor qualifies as a "debtor" under section 109 of the Bankruptcy Code. As such, the Debtor is the proper proponent of the Plan.

D.    Commencement of the Chapter 11 Case. On May 10, 2025 (the "Petition Date"), the Debtor commenced this Chapter 11 Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been appointed in this Chapter 11 Case. On May 30, 2025, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee").

(Page | 7)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

E.      Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Debtor's Chapter 11 Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of this Chapter 11 Case.

F.      The Bar Dates. On July 3, 2025, the Bankruptcy Court entered an order [Docket No. 183] (the "Bar Date Order"), setting, (i) July 21, 2025 as the last date for filing Claims against the Debtor that arose (or were deemed to have arisen) before the Petition Date for all creditors other than Governmental Units, including section 503(b)(9) claimants (the "General Bar Date"), and (ii) November 6, 2025 for all Governmental Units.

G.      Burden of Proof. The Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. The Debtor has met its burden with respect to each applicable element of section 1129 of the Bankruptcy Code. Each witness who testified on behalf of the Debtor at or in connection with the Confirmation Hearing was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**Adequacy of the Disclosure Statement**

H.      Disclosure Statement. The information contained in the Disclosure Statement contained extensive material information regarding the Debtor sufficient to allow parties entitled to vote on the Plan to make informed decisions regarding the Plan. Additionally, the Disclosure

8260639

(Page | 8)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and complies with any additional requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. Specifically, but without limitation, the Disclosure Statement complies with the requirements of Bankruptcy Rule 3016(c) by sufficiently describing in specific and conspicuous bold language the provisions of the Plan that provide for releases and injunctions against conduct not otherwise enjoined under the Bankruptcy Code and sufficiently identifies the persons and entities that are subject to the releases and injunctions. The Debtor's implementation of the Confirmation Procedures Order was appropriate. Solicitation of votes on the Plan complied with the Confirmation Procedures Order.

**The Solicitation Process**

I.      <u>Solicitation</u>. Each of the Plan, the Disclosure Statement, the Ballots, and the Confirmation Hearing Notice were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "<u>Local Rules</u>"), and the Confirmation Procedures Order. The form of the Ballot adequately addresses the particular needs of this Chapter 11 Case and is appropriate for the Holders of Claims in Class 1 (BOC Prepetition Secured Claims), Class 2 (Colebrook Prepetition Secured Claims), Class 6 (continuing Trade Vendor Claims ), and Class 7 (Other General Unsecured Claims) – the Classes of Claims entitled to vote to accept or reject the Plan. The period during which the Debtor solicited acceptances to the Plan was a

8260639

(Page | 9)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

reasonable period of time for Holders to make an informed decision to accept or reject the Plan, was in accordance with the Confirmation Procedures Order, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation. The Debtor was not required to solicit votes from the Holders of Claims or Interests in Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), Class 5 (Other Priority Claims), Class 8 (Interests), as these Classes and Interests are (i) Unimpaired under the Plan, and thus, the Holders of such Claims or Interests are deemed to have accepted the Plan; or (ii) not receiving or retaining any property under the Plan, and thus, the Holders of such Claims or Interests are deemed to reject the Plan. As described in and as evidenced by the Voting Declaration, the transmittal and service of the Plan, the Disclosure Statement, the Ballot, and the Confirmation Hearing Notice (the "Solicitation") were timely, adequate, and sufficient under the circumstances.

J.      Notice. All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to confirmation of the Plan) were served with the Confirmation Hearing Notice and have been given due, proper, timely, and adequate notice in accordance with the Confirmation Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice or re-solicitation is required.

8260639

(Page | 10)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

K.    <u>Good Faith Solicitation</u>. Based on the record before the Bankruptcy Court in this Chapter 11 Case, the Debtor, its current officers, directors, employees, and agents, including its attorneys, financial advisors and accountants, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Confirmation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VII.C of the Plan.

L.    <u>Voting</u>. As evidenced by the Voting Declaration, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Plan, the Confirmation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation. [As set forth in the Voting Declaration, Class 1 (BOC Prepetition Secured Claims), Class 2 (Colebrook Prepetition Secured Claims), and Class 6 (Continuing Trade Vendor Claims) voted to accept the Plan. Based on the foregoing, and as evidenced by the Voting Declaration, at least one Impaired Class of Claims has voted to accept the Plan in accordance with the requirements of sections 1124 and 1126 of the Bankruptcy Code.]

8260639

(Page | 11)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

M.    <u>Opt-Out Procedures</u>. The procedures for opting out of the Third-Party Release (the "<u>Opt-Out Procedures</u>") set forth in the Ballots, the Non-Voting Status Notice and Opt-Out Form, including the Opt-Out Deadline (each as defined in the Confirmation Procedures Order) and any supplemental deadline for Holders of Claims and Interests to opt-out of the Third-Party Release, are good, sufficient and adequate to bind the applicable parties to the Third-Party Release and are approved in all respects.

N.    <u>Releases, Exculpation, and Injunction</u>. The releases,[3] settlements, compromises, exculpations, and injunctions set forth in Article VII of the Plan and implemented by this Confirmation Order, are fair, equitable, reasonable, and in the best interests of the Debtor, its Estate, Creditors and Interest Holders. The Debtor Release and the Third-Party Releases are warranted, necessary, and appropriate, and are, in the case of the Third-Party Releases, consensual, and such releases are supported by the facts and the circumstances of this Chapter 11 Case and are consistent with sections 105, 1123(b)(6), and 1129 of the Bankruptcy Code and applicable law in this jurisdiction.  The record of the Confirmation Hearing and this Chapter 11 Case is sufficient to support the settlements, releases, exculpations, and injunctions provided for in Article VII of the Plan.

---

[3] "<u>Debtor Release</u>" means the releases set forth in Article VII.D.1 of the Plan and "<u>Third-Party Releases</u>" means the releases set forth in Article VII.D.2 of the Plan.

8260639

(Page | 12)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

O.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).  The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtor as the proponent of the Plan, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(i)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). With the exception of Administrative Claims (including Professional Fee Claims), DIP Claims, Receivables Superpriority Claims, and Priority Tax Claims, which need not be classified, Article III of the Plan classifies eight (8) Classes of Claims and Interests in the Debtor. The Claims and Interests placed in each Class are substantially similar to the other Claims and Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between Holders of Claims and Interests. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)     Unimpaired Classes Specified (11 U.S.C. § 1123(a)(2)). Articles III.B and III.C of the Plan specify that Claims or Interests in Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), and Class 5 (Other Priority Claims) (collectively, the "Unimpaired Classes") are Unimpaired under the Plan within the meaning section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

8260639

(Page | 13)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

(iii)    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Articles III.B and III.C of the Plan designate Claims and Interests in Class 1 (BOC Prepetition Secured Claims), Class 2 (Colebrook Prepetition Secured Claims), Class 6 (Continuing Trade Vendor Claims), Class 7 (Other General Unsecured Claims) and Class 8 (Interests) (collectively, the "Impaired Classes") as impaired within the meaning of section 1124 of the Bankruptcy Code and clearly specify the treatment of such Claims and Interests in these Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(iv)    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest in accordance with the Plan, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(v)    Adequate Means for Plan Implementation (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for the implementation of the Plan, including, without limitation, (i) creation of the Plan Administrator Wind-Down and Expense Reserve; and (ii) the procedures for making distributions to holders of Allowed Claims and Interests. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

(vi)    Prohibition of Issuance of Non-Voting Securities (11 U.S.C. § 1123(a)(6)). Section 1123(a)(6) of the Bankruptcy Code does not apply to the Plan because the Debtor does not

8260639

(Page | 14)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

propose to issue any non-voting equity securities under the Plan and any charter of the Debtor will, after the Effective Date, no longer be valid and existing.

(vii)    Designation of Officers, Directors, or Trustees (11 U.S.C. § 1123(a)(7)). The Plan appoints a Plan Administrator who will serve as the Debtor's sole officer and director following the Effective Date, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(viii)    Earnings from Personal Services (11 U.S.C. § 1123(a)(8)). Section 1123(a)(8) of the Bankruptcy Code applies only to individual debtors and is not applicable to this Chapter 11 Case.

(ix)    Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)). As permitted by section 1123(b)(1) of the Bankruptcy Code, pursuant to Articles III.A and III.B of the Plan, Claims or Interests in the Impaired Classes are Impaired and, pursuant to Articles III.A and III.B of the Plan, Claims in the Unimpaired Classes, are Unimpaired.

(x)    Assumption and Rejection (11 U.S.C. § 1123(b)(2)). As permitted by section 1123(b)(2) of the Bankruptcy Code and Article VI of the Plan, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such executory contract or unexpired lease: (a) was assumed or rejected previously by the Debtor; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume filed on or before the Effective Date; (d) is identified in the Plan Supplement, or (e) has been assumed and assigned to a Buyer of the Debtor's assets. Rejection of these executory contracts and unexpired leases

14

(Page | 15)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

pursuant to the Plan satisfies the requirements of section 365 of the Bankruptcy Code and is expressly authorized by section 1123(b)(2) of the Bankruptcy Code. The Debtor has exercised reasonable business judgment in determining to reject the Executory Contracts and Unexpired Leases to be rejected under the Plan. The rejection of each Executory Contract or Unexpired Lease rejected under the Plan shall be binding on the Debtor and each non-Debtor party to each such Executory Contract or Unexpired Lease.

(xi)  Settlement/Retention of Claim or Interests (11 U.S.C. § 1123(b)(3)). The entry of this Confirmation Order constitutes the Court's approval of all the compromises and settlements embodied in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, its Estate, and all Holders of Claims and Interests, and are fair, equitable, and well within the range of reasonableness. In concluding that the compromises and settlements contained in the Plan are substantively fair, the Court considered the following factors: (a) the probability of success of potential litigation compared to the benefit of such compromises and settlement; (b) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (c) the proportion of creditors and parties in interest that support the compromises and settlements; (d) the competency of counsel; and (e) the extent to which the compromises and settlement are the product of arm's length negotiations. The Court finds that each of these factors weigh in favor of approving the compromises and settlements embodied in the Plan. With respect to retention of Claims and

8260639

(Page | 16)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Interests, as permitted by section 1123(b)(3) of the Bankruptcy Code, Articles IV and V of the Plan provides that, from and after the Effective Date, except as otherwise expressly provided in the Plan, the Plan Administrator may pursue objections to, estimation of and settlements of Claims and Interests (subject to the terms of the Plan Administration Agreement), other than Claims or Interests that are Allowed pursuant to the Plan.

(xii)   Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). As permitted by section 1123(b)(6) of the Bankruptcy Code, the Plan includes other appropriate provisions not inconsistent with the applicable provisions of the Bankruptcy Code, including, without limitation, certain release, exculpation, and injunction provisions in Article VII of the Plan. Based upon the facts and circumstances of this Chapter 11 Case, the release, exculpation, and injunction provisions in the Plan, including the releases set forth in Article VII.D of the Plan, are fair, equitable, and reasonable, are supported by sufficient and valuable consideration, are an integral component of compromises and settlements underlying the Plan, are necessary for the realization of value for stakeholders, are the product of extensive arm's length negotiations, or based on consent, were necessary to the formation of the consensus embodied in the Plan documents, are in the best interests of the Debtor and its Estate, Creditors, and Holders of Interests, and are, in light of the foregoing, appropriate. The failure to implement the release, exculpation, and injunction provisions would seriously impair the Debtor's ability to confirm and consummate the Plan and would possibly lead to the conversion of the Debtor's Chapter 11 Case to a case under chapter 7

8260639

Debtor:                FLAGSHIP RESORT DEVELOPMENT CORPORATION
Case No.:              25-15047 (JNP)
Caption of Order:      FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I)
                       APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT
                       ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH
                       AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT
                       DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE
                       BANKRUPTCY CODE

---

of the Bankruptcy Code. Each Exculpated Party and Released Party afforded value to the Debtor

and aided in the Plan process. Each Exculpated Party and Released Party played an integral role

in the formulation of the Plan and has expended significant time and resources analyzing and

negotiating the issues presented by this Chapter 11 Case. In addition, the Consensual Third-Party

Releases set forth in Article VII.D.2 of the Plan are consensual, and the exculpations set forth in

Article VII.C of the Plan do not relieve any party of liability for fraud, gross negligence or willful

misconduct. Accordingly, based upon the record of this Chapter 11 Case, the representations of

the parties, and/or the evidence proffered or adduced at the Confirmation Hearing, the Bankruptcy

Court finds that the release, exculpation, and injunction provisions set forth in Article VII of the

Plan are consistent with the Bankruptcy Code and applicable law and are appropriate under the

circumstances.

P.      The Debtor's Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

Except as otherwise provided for or permitted by order of the Bankruptcy Court, the Debtor has

complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local

Rules, and the Confirmation Procedures Order in transmitting the Plan, the Disclosure Statement,

the Ballot, and related documents and notices and in soliciting and tabulating the votes on the Plan.

Accordingly, the requirements of section 1129(a)(2) of the Bankruptcy Code are satisfied.

Q.      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtor has proposed

the Plan, including all documents necessary to effectuate the Plan, in good faith and not by any

8260639

(Page | 18)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

means forbidden by law, thereby satisfying the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtor's good faith is evident from the facts and record of this Chapter 11 Case, the Disclosure Statement, and the record of the Confirmation Hearing and other proceedings held in this Chapter 11 Case. The Plan itself and the process leading to its formulation provide independent evidence of the Debtor's good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Estate and to maximize distributions to all Creditors and Holders of Interest. Further, the Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are integral to the Plan and supported by valuable consideration.

R.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtor, or by any other person acquiring property under the Plan, for services or for costs and expenses in or in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been approved by, or shall be subject to the approval of, the Bankruptcy Court as reasonable. Accordingly, the Plan satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

S.     Directors, Officers, and Successors (11 U.S.C. § 1129(a)(5)). The Plan does not appoint any officers or directors of the Debtor, except as otherwise set forth in Article IV.N with

18

(Page | 19)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

respect to the Plan Administrator. To the extent applicable, the Debtor has properly and adequately identified the proposed Plan Administrator in the Plan Supplement.

T.  <u>No Rate Changes (11 U.S.C. § 1129(a)(6))</u>. The Plan does not provide for any rate changes over which a governmental regulatory commission has jurisdiction. Accordingly, section 1129(a)(6) of the Bankruptcy Code is not applicable in this Chapter 11 Case.

U.  <u>Best Interest of Creditors (11 U.S.C. § 1129(a)(7))</u>. As more fully set forth in the Disclosure Statement, the Parks Declaration and Madden Declaration, the Plan satisfies the best interests of creditors test because the Plan provides a greater recovery to the Holders of Claims than such Holders would receive under a liquidation under chapter 7 of the Bankruptcy Code based upon evidence proffered or adduced at the Confirmation Hearing. The Plan pays in cash from the Debtor's Assets or otherwise fully satisfies all Allowed Administrative Claims, DIP Claims, Receivables Superpriority Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims, and Other Priority Claims, leaving the Net Distributable Proceeds available from the Plan Administrator Wind-Down and Expense Reserve, the Palmer Litigation Bond, and Retained Cause of Actions, if any, available to the Continuing Trade Vendor Claims and Other General Unsecured Claims under the terms provided for in the Plan.  In a chapter 7 case, the Allowed Administrative Claims, DIP Claims, Priority Claims, Secured Tax Claims, Receivables Superpriority Claims, Other Secured Claims, and Other Priority Claims would be paid from the Debtor's Assets ahead of General Unsecured Claims. Each Holder of a Claim in an Impaired Class either has accepted

(Page | 20)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

---

the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code on such date. Recoveries pursuant to the Plan are equal to or in excess of those that would be available if the Debtor was liquidated pursuant to chapter 7 and, therefore, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

V.      <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Claims in Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), and Class 5 (Other Priority Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Class 1 (BOC Prepetition Secured Claims), Class 2 (Colebrook Prepetition Secured Claims), and Class 6 (Continuing Trade Vendor Claims) voted to accept the Plan by at least two-thirds in amount and one-half in number. *See* Voting Declaration. Accordingly, the Plan satisfies the requirements of section 1129(a)(8) of the Bankruptcy Code.

W.      <u>Treatment of Administrative Claims, Priority Tax Claims, and Other Priority Claims (11 U.S.C. § 1129(a)(9))</u>. The treatment of Claims under the Plan of the type specified in sections 507(a)(1) through 507(a)(8) of the Bankruptcy Code, if any, complies with the provisions of section 1129(a)(9) of the Bankruptcy Code because Article II of the Plan provides that, except to the extent an entity agrees to less favorable treatment: (i) each Holder of an Allowed

20

(Page | 21)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Administrative Claim (except with respect to Professional Fee Claims, which shall be paid upon Final Order of allowance by the Bankruptcy Court) shall be paid (x) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (y) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date, (ii) the DIP Claims and the Receivables Superpriority Claims, if any, shall receive Cash in an amount equal to the amount of such Claim, or, with respect to the Receivables Superpriority Claims, shall otherwise be fully satisfied, on the Effective Date, and (iii) each Holder of an Allowed Priority Tax Claim shall be paid (x) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable nonbankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code, or (y) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such Holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court. Accordingly, the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code.

X.    <u>Acceptance by at Least One Impaired Class (11 U.S.C. § 1129(a)(10))</u>. Claims in Class 3 (Secured Tax Claims), Class 4 (Other Secured Claims), and Class 5 (Other Priority Claims) are Unimpaired under the Plan and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to section 1126(f) of the Bankruptcy Code. Holders of Claims in Class 1 (BOC Prepetition Secured Claims), Class 2 (Colebrook Prepetition

8260639

(Page | 22)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Secured Claims), and Class 6 (Continuing Trade Vendor Claims) voted to accept the Plan by at least two-thirds in amount and one-half in number. *See* Voting Declaration. Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

Y.     Feasibility (11 U.S.C. § 1129(a)(11)). The Plan satisfies section 1129(a)(11) of the Bankruptcy Code. The information in the Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of the Debtor being able to meet its financial obligations under the Plan and that confirmation of the Plan is not likely to be followed by the need for further liquidation or financial reorganization of the Debtor, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

Z.     Payment of Fees (11 U.S.C. § 1129(a)(12)). Pursuant to Article II.E of the Plan, the Debtor is required to pay all statutory fees due and owing to the U.S. Trustee at the time of Confirmation on or before the Effective Date. Accordingly, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

AA.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)). With respect to the Impaired Classes deemed to reject the Plan, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code even though the requirements of section 1129(a)(8) have not been met. The Debtor has demonstrated by a preponderance of the evidence that the Plan (a) satisfies

(Page | 23)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

all of the other requirements of section 1129(a) of the Bankruptcy Code and (b) does not "discriminate unfairly" and is "fair and equitable" with respect to Classes that were deemed to reject the Plan. The Plan is "fair and equitable" with respect to the non-accepting Claimants because no junior Class of Claims or Interests will receive or retain any property from the Debtor's Estate under the Plan on account of such Claims or Interests. The evidence supporting the Plan proffered or adduced by the Debtor at, or prior to, or in declarations filed in connection with, the Confirmation Hearing regarding the Debtor's classification and treatment of Claims: (a) is reasonable, persuasive, credible, and accurate; (b) utilizes reasonable and appropriate methodologies and assumptions; and (c) has not been controverted by other creditable evidence. The Plan, therefore, satisfies the requirements of section 1129 of the Bankruptcy Code and may be confirmed despite the fact that not all Impaired Classes have voted to accept the Plan.

BB.     Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan that was solicited and brought to the Bankruptcy Court for confirmation in this Chapter 11 Case. Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in this Chapter 11 Case.

CC.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933 and no governmental entity has objected to the confirmation of the Plan on any such grounds. Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

8260639

(Page | 24)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

DD.    <u>Non-Applicability of Certain Sections (11 U.S.C. §§ 1123(c), 1129(a)(13) - (16), 1129(e))</u>. The Debtor is not individual and does not owe any domestic support. The Debtor also has no obligation to pay for retiree benefits and is neither a nonprofit corporation nor a "small business." Accordingly, sections 1123(c), 1129(a)(13) - (16), and 1129(e) of the Bankruptcy Code do not apply to this Chapter 11 Case.

EE.    <u>Modifications of the Plan (11 U.S.C. § 1127)</u>. The modifications made to the Plan since the Solicitation, including those in the *Notice of Non-Material Modifications to First Amended Plan of Liquidation* [Docket No. 302], do not constitute changes that materially or adversely change the treatment of any Claims or Interests and do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims or Interests against the Debtor be afforded an opportunity to change previously cast acceptances or rejections of the Plan. Thus, the Debtor has complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

FF.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, all other pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with Confirmation of the Plan, and all evidence and arguments made, proffered or adduced at the Confirmation Hearing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

8260639

(Page | 25)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

GG. <u>Implementation</u>. All documents and agreements necessary to implement the Plan, and all other relevant and necessary documents, have been negotiated in good faith and at arm's length, do not inappropriately conflict with applicable non-bankruptcy law, and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.

HH. <u>Good Faith</u>. Based on the record before this Bankruptcy Court in this Chapter 11 Case, the Debtor will be acting in good faith within the meaning of section 1125(e) of the Bankruptcy Code if it proceeds to (i) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby, and (ii) take the actions authorized and directed by this Confirmation Order, and shall not be liable under any applicable law, rule, or regulation governing solicitation of acceptance or rejection of the Plan or the offer, issuance, sale, or purchase of securities.

II. <u>Additional Findings Regarding Releases</u>. The releases provided pursuant to Article VII of the Plan: (i) represent a sound exercise of the Debtor's business judgment; (ii) were negotiated in good faith and at arm's length; and (iii) are (a) in exchange for good and valuable consideration, (b) in the best interest of the Debtor and its Estate, and (c) are fair, equitable, and reasonable under the circumstances of this Chapter 11 Case.

JJ. <u>Retention of Jurisdiction</u>. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Bankruptcy Court, except as otherwise provided in the Plan or herein, shall retain

8260639

(Page | 26)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

jurisdiction over all matters arising out of, or related to, this Chapter 11 Case and the Plan to the fullest extent permitted by law.

**ORDER**

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

**General Decrees and Implementation**

1.     Adequacy of the Disclosure Statement. The Disclosure Statement hereby is APPROVED on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and contains sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

2.     Confirmation of the Plan. The Plan, attached hereto as **Exhibit A**, and each of its provisions, including all exhibits thereto and all exhibits and documents included in the Plan Supplement, shall be, and hereby is, CONFIRMED as set forth herein pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

3.     Objections Overruled. All objections, responses to, and statements and comments, in opposition to or inconsistent with the Plan, other than those withdrawn with prejudice, resolved in their entirety prior to, or on the record at, the Confirmation Hearing, or sustained by the Court on the record on the Confirmation Hearing or pursuant to the Court's oral decision rendered

8260639

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

September 18, 2025, shall be, and hereby are, OVERRULED and DENIED in their entirety. All withdrawn objections are deemed withdrawn with prejudice.

4.      Plan Classification Controlling. Unless otherwise set forth herein, the classifications of Claims and Interests for purposes of distributions, if any, under the Plan shall be governed solely by the terms of the Plan.

5.      Confirmation Hearing Notice. The Debtor provided good and sufficient notice of the Confirmation Hearing and the deadlines for filing and serving objections to the Plan, which notices hereby are approved.

6.      Implementation of the Plan. The Debtor and the Plan Administrator, each to the extent applicable and in accordance with the terms and conditions of the Plan and the Plan Administration Agreement (as defined herein), are authorized to (a) execute, deliver, file, and/or record such documents, contracts, instruments, releases, and other agreements, (b) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, and (c) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.

7.      Approval of Plan Administration Agreement. The *Plan Administration Agreement* (the "Plan Administration Agreement") attached to the Plan Supplement is approved (including, for the avoidance of doubt, the limitation of liability, exculpation, and indemnification provisions set forth in Paragraph 8 therein and Article VII of the Plan with respect to the Plan Administrator)

8260639

(Page | 28)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

and the Debtor and Plan Administrator as applicable, are authorized and directed to execute and perform under the Plan Administration Agreement without further order of this Bankruptcy Court. Joseph J. DiPasquale of Fox Rothschild LLP is recognized and approved as the initial Plan Administrator, and the Plan Administrator is (a) authorized to execute and perform under the Plan Administration Agreement, to appear and be heard before this Bankruptcy Court on all matters relating to this Chapter 11 Case (as a representative of the Post-Effective Date Debtor, the Debtor, and/or the Estate, as appropriate), and to present to creditors, other courts of competent jurisdiction, and any other party to the Plan Administration Agreement, the Plan, and this Confirmation Order as evidence of his authority and (b) vested with all of the power and authority set forth in the Plan and the Plan Administration Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the Plan Administration Agreement, as applicable.

8.  <u>Plan Administrator Wind-Down and Expense Reserve</u>. Notwithstanding anything to the contrary in the Plan or this Confirmation Order, on the Effective Date of the Plan, the Plan Administrator Wind-Down and Expense Reserve shall be funded by the Net Distributable Proceeds pursuant to the Plan and the Global Resolution (as defined in the Plan) and as set forth in the Plan Supplement.

9.  <u>No Action</u>. To the extent that, under applicable non-bankruptcy law, any action to effectuate the terms of the Plan would otherwise require the consent or approval of the managers, directors, or officers of the Debtor, this Confirmation Order shall, pursuant to sections 1123(a)(5)

8260639

(Page | 29)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

and 1142 of the Bankruptcy Code, constitute the consent or approval, and such actions are deemed to have been taken by unanimous action of the managers, directors, and officers of the Debtor.

10.     <u>Binding Effect</u>. From and after entry of this Confirmation Order, and subject to the occurrence of the Effective Date, except to the extent otherwise provided in the Plan or this Confirmation Order, the provisions of the Plan, as applicable, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, personal representative, successor, or assign of such Person, including, but not limited to, all Holders of Claims and Interests of the Debtor (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests accepted, rejected or are deemed to have accepted or rejected the Plan), and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor, and all other parties in interest in this Chapter 11 Case.

11.     <u>Vesting of Assets</u>. Notwithstanding section 1141(b) of the Bankruptcy Code, the Debtor's Assets (as defined in the Plan, which does not include any Assets sold to a Buyer) shall vest in the Post-Effective Date Debtor, subject to and in accordance with the provisions of the Plan, the Plan Administration Agreement, and this Confirmation Order.

12.     <u>Cancellation of Outstanding Interests</u>. As of the Effective Date, and as except as otherwise provided for in the Plan, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, (a) all agreements and other documents evidencing the Claims or rights of any Holders of such Claims against the Debtor, including, but

8260639

(Page | 30)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

not limited to, all contracts, notes, and guarantees, and (b) all Interests, shall be deemed automatically cancelled and the obligations of the Debtor thereunder or in any way related thereto, including any obligation of the Debtor to pay any franchise or similar type taxes on account of such Claims or Interests, shall be released.

13.    <u>Cancellation of Existing Securities</u>. Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtor that are specifically reinstated pursuant to the Plan or which are being assumed by a Buyer in connection with the Asset Purchase Agreement approved by the Sale Order) shall be released.

14.    <u>Directors, Officers and Board Members of the Debtor</u>. As of the Effective Date, except for purposes of evidencing a right to a distribution under the Plan or as otherwise provided for in the Plan or herein, all officers, directors, and members of the Board of Directors of the Debtor shall be deemed to have resigned. The Plan Administrator, as Plan Administrator for all purposes of the Plan, shall act for the Post-Effective Date Debtor in the same fiduciary capacity as

8260639

(Page | 31)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

applicable to a board of managers, directors, officers, general partner, or other governing body subject to the provisions of the Plan, and on the Effective Date, shall succeed to the powers of the board of managers, directors, officers, general partner, or other governing body of the Debtor.

**Treatment of Executory Contracts and Unexpired Leases**

15.    The provisions of Article VI of the Plan governing executory contracts and unexpired leases are hereby approved in their entirety.

16.    Rejection of Contracts and Leases. On the Effective Date, except as otherwise provided under the Plan, and except to the extent an Executory Contract or Unexpired Lease entered into by the Debtor prior to the Petition Date: (a) was assumed or rejected previously by the Debtor; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume Filed on or before the Effective Date; (d) is identified in the Plan Supplement to be assumed under the Plan, or (e) has been assumed and assigned to a Buyer of the Debtor's Assets, each Executory Contract and Unexpired Lease entered into by the Debtor prior to the Petition Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. This Confirmation Order shall constitute approval of any such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

17.    Claims Based on Rejection of Contracts or Leases. Claims, if any, created by the rejection of Executory Contracts and Unexpired Leases, must be Filed with the Bankruptcy Court and served on the Plan Administrator and its counsel, in accordance with the Plan Administration

8260639

(Page | 32)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Agreement, within the later of (a) twenty-one (21) days after service of the Notice of Effective

Date (as defined below), or (b) thirty (30) days after service of notice of entry of an order of the

Court (other than the Confirmation Order) approving the rejection of a particular Executory

Contract or Unexpired Lease on the counterparty thereto, and applicable notices filed and served

by the Debtor pursuant thereto. Absent order of the Court to the contrary, any Claims arising from

the rejection of an Executory Contract or Unexpired Lease not Filed by the applicable deadline

will not be considered Allowed and such Person or Entity shall not be treated as a Creditor for

purposes of distributions under the Plan with respect to such claim.

18.  <u>Insurance Policies</u>. Notwithstanding anything to the contrary in the Plan or the

Confirmation Order, any notice of any cure amounts, the Sale Order, the Bar Date Order, any claim

objection, any other document related to any of the foregoing or any other order of the Bankruptcy

Court (including, without limitation, any other provision that purports to be preemptory or

supervening, grants an injunction, discharge or release, confers Bankruptcy Court jurisdiction, or

requires a party to opt out of any releases): (a) on the Effective Date, the Debtor shall be deemed

to have assumed all insurance policies, unaltered and in their entireties, pursuant to sections 105

and 365 of the Bankruptcy Code and, after the foregoing assumption of the insurance policies, all

of the insurance policies shall vest, unaltered and in their entireties, in the Post-Effective Date

Debtor; (b) nothing (i) alters, modifies, or otherwise amends the terms and conditions of (or the

coverage provided by) any insurance policies or (ii) alters or modifies the obligation, if any, of the

(Page | 33)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

insurers to pay claims covered by insurance policies; (c) nothing shall permit or otherwise effectuate a sale, assignment or other transfer of any insurance policy and/or any rights, benefits, claims, proceeds, rights to payment, or recoveries under and/or relating to any insurance policy without the prior express written consent of the applicable insurer; and (d) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article VII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of the Bankruptcy Court, solely to permit: (i) claimants with valid workers' compensation claims or direct action claims against an insurer under applicable non-bankruptcy law to proceed with their claims; (ii) the insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of the Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any insurer under applicable non-bankruptcy law, or an order has been entered by the Bankruptcy Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (iii) the insurers to cancel any insurance policies and take other actions relating to the insurance policies (including effectuating a setoff and/or asserting any recoupment or subrogation rights or claims) provided such cancellation or action is consistent with the policy, the Bankruptcy Code and applicable non-bankruptcy law.

19.     <u>Objections to Claims</u>. Except as expressly provided in the Plan or in this Confirmation Order, the Debtor (before the Effective Date) or the Plan Administrator (on or after

8260639

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

the Effective Date), as applicable, shall have the exclusive authority and standing to file objections to Claims. Any objections to Claims shall be Filed and served, notwithstanding Local Rule 3007-1(b)(1), on or before the later of (a) one hundred eighty (180) days after the Effective Date or (b) such date as may be fixed by the Bankruptcy Court; *provided however*, that the Plan Administrator may seek extensions of this date from the Bankruptcy Court. Notwithstanding anything to the contrary in the Disclosure Statement or the Plan, after the later of the Confirmation Date or an applicable Bar Date, a proof of claim that is filed or amended without authorization of the Bankruptcy Court shall be automatically disallowed.

20.     <u>Setoffs and Recoupment</u>. Except with respect to Professional Fee Claims or Claims or Interests that are Allowed pursuant to the Plan, the Plan Administrator may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Plan Administrator of any such Claim it may have against the Holder of such Claim.

21.     Notwithstanding anything to the contrary herein, nothing in this Plan or the Confirmation Order shall modify the rights, if any, of any counterparty to an Executory Contract or Unexpired Lease to assert any right of setoff or recoupment that such party may have under applicable bankruptcy Law or non-bankruptcy Law, including, but not limited to, the (i) ability, if

8260639

(Page | 35)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

any, of such parties to setoff or recoup a security deposit held pursuant to the terms of their Unexpired Lease(s) with the Debtor, or any successors to the Debtor, under this Plan, (ii) assertion of rights of setoff or recoupment, if any, in connection with Claims reconciliation, or (iii) assertion of setoff or recoupment as a defense, if any, to any Claim or action by the Debtor, the Post-Effective Date Debtor, or any successors of the Debtor. Notwithstanding the foregoing, the rights of the Debtor, the Plan Administrator, and any of their successors to contest a right of setoff or recoupment asserted by any Holder of a Claim, including a Claim arising from an Executory Contract or Unexpired Lease are fully reserved and preserved.

22.  <u>Administrative Claim Bar Dates</u>. Administrative Claims must be filed on or before October 13, 2025 at 5:00 p.m. prevailing Eastern Time for any Administrative Claim (excluding Professional Fee Claims) arising on or prior to September 12, 2025 as the last date and time by which claimants holding such Administrative Claims must File Claims, and (ii) for any Administrative Claims (excluding Professional Fee Claims) arising after September 12, 2025, such Claims must be Filed by the earlier of: (a) the 15th day of the month following the month in which the Claim arose and (b) 14 days following the Effective Date.

23.  <u>Professional Fee Claims</u>. All final requests for Payment of Professional Fee Claims must be filed and served on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court no later than forty-five (45) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; *provided, further*, that any Professional who

8260639

(Page | 36)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order, and the Professionals of the Debtor, Committee, BOC and Colebrook are subject to their respective Professional Fee Caps. Objections to any Professional Fee Claim must be Filed and served on the Debtor, the Plan Administrator and the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. To the extent necessary, the Plan and this Confirmation Order shall amend and supersede any previously entered order regarding the payment of Professional Fee Claims.

**Releases, Injunction and Exculpation**

24.     All release, injunction and exculpation provisions contained in the Plan, including, without limitation, those contained in Article VII of the Plan, are hereby authorized, approved, and shall be effective and binding on all persons and entities, to the extent expressly described in the Plan; provided, however, that notwithstanding anything contained in the Plan, the Plan Supplement, the Confirmation Order or any other document or pleading filed in the Chapter 11

8260639

(Page | 37)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Case to the contrary, nothing shall release any party from any obligation or undertaking contained in the Asset Purchase Agreement, Sale Order, or Global Resolution.[4]

25.     <u>Debtor Release</u>. As of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each of the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtor, its Estate, and, if applicable, the Post-Effective Date Debtor, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtor, its Estate, or the Post-Effective Date Debtor solely as it relates to the Released Parties), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtor, its Estate, the Post-Effective Date Debtor, if applicable, or their

---

[4] Kevin Jones and Roxanne Passarella are the current Co-CEOs of the Debtor.  For the avoidance of doubt and notwithstanding anything herein to the contrary, this Confirmation Order does not void the releases approved via the Sale Order as it pertains to the Purchaser, Kevin Jones, Roxanne Passarella, and the Management Company, and such releases shall remain binding and in full force and effect pursuant to the terms thereof.

8260639

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents and any other Persons, including Related Parties, claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Estate, the Chapter 11 Case, the Global Resolution, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim, or Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtor and any Released Party, the Receivables Facilities, the distribution of any Cash or other property of the Debtor to any Released Party, the assertion or enforcement of rights or remedies against the Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the Debtor's in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Case, any intercompany transactions, the negotiation and consummation of any sale of the Debtor's assets, the negotiation, formulation, or preparation of the Plan, Disclosure Statement, Plan Supplement, or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the solicitation of votes with respect to the Plan, the DIP Facility, the DIP

8260639

Debtor:                    FLAGSHIP RESORT DEVELOPMENT CORPORATION
Case No.:                  25-15047 (JNP)
Caption of Order:          FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I)
                           APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT
                           ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH
                           AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT
                           DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE
                           BANKRUPTCY CODE

Loan Documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; provided, however, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, provided, further, however, consistent with the Court's oral decision on September 18, 2025, the definition of Related Party in Article I.A.(126) in relation to the Released Party under the Plan shall be modified to specifically exclude "and former" and such former Related Parties shall not be released by the Debtor under the Plan or this Confirmation Order.

26.     Notwithstanding anything to the contrary in the foregoing paragraph 25, except with respect to the Released Parties, the Debtor does not, pursuant to the releases set forth above, release (i) any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims; (ii) any post- Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (iii) the Excluded Parties. The foregoing does not affect the Debtor's Stipulations and Releases contained in Paragraph 2 of the Final DIP Order, which shall remain in full force and effect.

27.     Except as set forth in paragraph 26, for the avoidance of doubt, any claims or Causes of Action that may be asserted by the Debtor, its Estate, the Plan Administrator, and, if applicable, the Post-Effective Date Debtor against the Released Parties are not Retained Causes of

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Action and shall be fully and finally released, enjoined, and discharged pursuant to Article VII.D.1. of the Plan and the Debtor, its Estate, the Plan Administrator, and, if applicable, the Post-Effective Date Debtor, in each case on behalf of themselves and their respective successors, assigns, and representatives and any and all other Persons or Entities that may purport to assert any claims or Causes of Action directly or derivatively, by, through, for, or because of the foregoing Debtor, its Estate, the Plan Administrator, and, if applicable, the Post-Effective Date Debtor shall not be entitled to any recovery from the Released Parties or any of their Related Parties, unless such Related Party is an Excluded Party.

28.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to implementing the Plan; (ii) in the best interests of the Debtor and all Holders of Claims and Interests; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Debtor, the Debtor's Estate, or, if applicable, the Post-Effective Date Debtor, asserting any claim or Cause of Action released pursuant to the Debtor Release.

29.     <u>Third-Party Releases</u>. Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each of the Released Parties, will be deemed

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively by, through, for, or because of the foregoing Persons, including Related Parties, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtor or the Estate, solely as it relates to the Released Parties), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Estate, the Chapter 11 Case, the Global Resolution, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor,

8260639

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtor and any Released Party, the Receivables Facilities, the distribution of any Cash or other property of the Debtor to any Released Party, the assertion or enforcement of rights or remedies against the Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the Debtor's in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Case, any intercompany transactions, the negotiation and consummation of the any sale of the Debtor's assets, the negotiation, formulation, or preparation of the Plan, Disclosure Statement, Plan Supplement, or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the solicitation of votes with respect to the Plan, the DIP Facility, the DIP Loan Documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided, however,* that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct, provided, further, however, consistent with the Court's oral decision on September 18, 2025, the definition of Related Party in Article I.A.(126) in relation to the Released Party under the Plan shall be modified to specifically exclude "and former" and

8260639

(Page | 43)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

such former Related Parties shall not be released by the Debtor under the Plan or this Confirmation Order.

30.     Notwithstanding anything to the contrary in the foregoing paragraph 29, the following shall not, pursuant to the releases set forth above, be released: (i) except with respect to Causes of Action against the Released Parties, any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims; (ii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (iii) the rights of Holders of Allowed Claims to receive distributions under the Plan; or (iv) the Excluded Parties.

31.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, of the releases provided in Article VII.D.2. of the Plan, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases provided in Article VII.D.2. of the Plan are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) in the best interests of the Debtor and its Estate; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to Article VII.D.2.

8260639

(Page | 44)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

32.     <u>Temporary Injunction for Debtor</u>. Pursuant to Section 362(c)(1) of the Bankruptcy Code, the automatic stay of any act against the property of the Debtor's Estate will continue until such property is no longer property of the Debtor's Estate, and pursuant to Section 362(c)(2) of the Bankruptcy Code, the stay of any other act described in section 362(a) of the Bankruptcy Code, continues until the earlier of the closure or dismissal of the Chapter 11 Case. As of the Effective Date, and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or this Order, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Plan Administrator, the Assets, or the Released Parties or their respective financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision through and until the date upon

8260639

(Page | 45)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

which all remaining property of the Debtor's Estate has been liquidated and distributed in accordance with the Plan and the Plan has been fully administered; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. For the avoidance of doubt, Article VII.E.1 shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.

33.     <u>Injunction as to Non-Debtor Released Parties.</u> Pursuant to Section 362(c)(1) of the Bankruptcy Code, the automatic stay of any act against the property of the Debtor's Estate will continue until such property is no longer property of the Debtor's Estate and pursuant to Section 362(c)(2) of the Bankruptcy Code, the stay of any other act described in section 362(a) of the Bankruptcy Code, continues until the earlier of the closure or dismissal of the Chapter 11 Case. As of the Effective Date, and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or this Order, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under Article VII of the Plan (the "<u>Released Claims and Interests</u>") are permanently enjoined from taking any of the following actions against the Plan Administrator, the Assets of the Post-Effective Date Debtor, or the Released Parties (other than the Debtor), or their respective financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective

8260639

(Page | 46)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. For the avoidance of doubt, Article VII.E.1 shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.

34.    Exculpation. Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from the Petition Date to the Effective Date, any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement and any Sale Transactions, the pursuit of Confirmation, the pursuit of consummation of a Sale Transaction, the administration and implementation of the Plan, the distribution of property under the Plan or any

8260639

(Page | 47)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

other related agreement, except for Claims related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. For the avoidance of any doubt, the Exculpated Parties are exculpated exclusively for conduct occurring between the Petition Date and the Effective Date. The Debtor and its Professionals have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, any Sale Transaction, or any document, instrument, or agreement (including the other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.

**Findings Relating to the Sale Transaction**

8260639

(Page | 48)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

35.     The findings of fact and conclusions of law set forth at the record of the hearing on approval of the Sale Transaction and in the Sale Order are incorporated herein by reference in their entirety and shall govern the Sale Transaction from the Debtor to the Buyer.

36.     The sale of the Debtor's assets, as set forth in the Plan and the Asset Purchase Agreement, is hereby approved pursuant to sections 1123(a)(5)(D), 1123(b)(4), and 1141(c) of the Bankruptcy Code.  The transfer of assets shall be subject to the terms approved in the Sale Order.

37.     The Sale Transaction under the Plan shall be exempt from any stamp, transfer, or similar tax pursuant to section 1146(a) of the Bankruptcy Code.

38.     The Debtor, Plan Administrator, and any authorized party are hereby empowered to take all actions necessary to consummate the Sale Transaction and implement the Plan, including the execution of documents and instruments required to effectuate the transfer.

**Payment of Statutory Fees and Tax Issues**

39.     <u>Payment of Statutory Fees and U.S. Trustee Reporting Requirements</u>. All Quarterly Fees payable on or before the Effective Date shall be paid by the Debtor in full in cash on the Effective Date. After the Effective Date, the Debtor, any entity making disbursements on behalf of any Debtor or any Post-Effective Date Debtor, including the Plan Administrator (solely in its capacity as such), or any entity making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor, including the Plan Administrator (solely in its capacity as such), shall be jointly and severally liable to pay Quarterly Fees in full in cash when due in this Chapter

(Page | 49)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11- MOR. After the Effective Date, the Debtor, the Post-Effective Date Debtor, and the Plan Administrator shall cause to be filed with the Bankruptcy Court post-confirmation quarterly reports for this Chapter 11 Case for each quarter (including any fraction thereof) that this Chapter 11 Case is pending, using UST Form 11-PCR. The U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees in this Chapter 11 Case and shall not be treated as providing any release under the Plan. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

40.    <u>Compliance with Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate

8260639

(Page | 50)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

such distributions, including, without limitation, requiring that the Holder of an Allowed Claim complete the appropriate IRS Form W8 or IRS Form W-9, as applicable to each Holder or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

41.     The Plan Administrator shall not be required to make distributions on any Allowed Claim if the Holder thereof has not provided all documentation, that in the Plan Administrator's reasonable business judgment, is necessary to determine all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Distribution.

42.     <u>Exemption from Certain Taxes and Fees</u>. Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, privilege tax, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local government officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the

8260639

(Page | 51)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the assuming and assigning any contract, lease or sublease; (3) any transaction authorized by this Plan; (4) any sale of an Asset by the Debtor or Plan Administrator, as applicable, in furtherance of the Plan, including but not limited to any sale of personal or real property and (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan.

**<u>Wind Down and Dissolution and Approval of Consents and Authorization to Take Action</u>**

43.     On or after the Effective Date, the Plan Administrator shall have the authority and discretion to take all necessary action to dissolve the Debtor. Upon certification to be filed with the Bankruptcy Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing this Chapter 11 Case, the Debtor shall be deemed to be dissolved without any further action by the Debtor or the Plan Administrator, including the filing of any documents in any office in any jurisdiction where the Debtor is organized.

44.     From and after the Effective Date, the Debtor shall not be required to file any document or take action to withdraw its business operations from any states in which the Debtor was previously conducting business. Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtor without any requirement of further action by the Debtor. On and after the Effective Date, the Debtor's

8260639

(Page | 52)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

remaining affairs shall be administered and managed by the Plan Administrator in accordance with the Plan and Plan Administration Agreement.

45.     This Confirmation Order shall constitute all authority, approvals, and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, and any documents, instruments, securities, or agreements, and any amendments or modifications thereto.

**Miscellaneous**

46.     <u>Immaterial Modifications</u>. Without need for further order or authorization of the Bankruptcy Court, but subject to any limitations set forth in the Plan, the Debtor is authorized and empowered to make any and all modifications to any and all documents that are necessary to effectuate the Plan that do not materially modify the terms of such documents and are consistent with the Plan and this Confirmation Order.

47.     <u>Effect of Confirmation on Modifications</u>. Entry of this Confirmation Order means that all modification or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

8260639

(Page | 53)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

48.     Documents and Instruments. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

49.     Conditions to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Article VIII of the Plan have been satisfied or waived pursuant to Article VIII of the Plan.

50.     Vacatur of Order. If this Confirmation Order is vacated or deemed vacated, then the Plan shall be deemed null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtor or the Released Parties, (b) prejudice in any manner the rights of the Holder of any Claim against, or Interest in, the Debtor, (c) prejudice in any manner any right, remedy or claim of the Debtor, or (d) be deemed an admission against interest by the Debtor or any other Person or Entity.

51.     Retention of Jurisdiction. The Bankruptcy Court shall retain and have jurisdiction over any matters arising out of, or related to, this Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, but not limited to, the matters set forth in Article X of the Plan.

52.     Forum for Actions. Without permission of the Bankruptcy Court, no judicial, administrative, arbitral, or other action or proceeding shall be commenced against the Plan

8260639

(Page | 54)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Administrator in its capacity as such, with respect to its status, duties, powers, acts, or omissions in such capacity in any forum other than the Bankruptcy Court.

53.    Conflicts. To the extent that any provisions of the Disclosure Statement or any other order (other than this Confirmation Order) entered in this Chapter 11 Case (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan or this Confirmation Order, except the Global Resolution which is incorporated herein, in its entirety, this Confirmation Order shall govern and control except as expressly set forth herein or in the Plan. In the event of any inconsistency in the Plan and this Confirmation Order, this Confirmation Order shall govern.

54.    Severability of Plan Provisions. Each term and provision of the Plan, as it may have been amended by this Confirmation Order, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (c) non-severable and mutually dependent.

55.    Waiver or Estoppel. Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtor or its counsel, or any other entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, papers filed with this Bankruptcy Court, or stated on the record at the Confirmation Hearing, prior to the Confirmation Date.

8260639

(Page | 55)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

56. <u>Governing Law</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, including the Plan Administration Agreement which shall be governed by and construed in accordance with the laws of the State of Delaware, in which case the governing law of such agreement shall control).

57. <u>Applicable Non-Bankruptcy Law</u>. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

58. <u>Notice of Order</u>. In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Confirmation Order and the occurrence of the Effective Date (the "<u>Notice of Effective Date</u>"), substantially in the form annexed hereto as **Exhibit B**, to all parties who currently hold a Claim or Interest in this case, including the U.S. Trustee, the Committee, the Internal Revenue Service, the United States Attorney for the District of New Jersey, and any party filing a notice pursuant to

8260639

(Page | 56)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Bankruptcy Rule 2002. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and occurrence of the Effective Date.

59.     Post-Effective Date Notice Pursuant to Bankruptcy Rule 2002. After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest (except those listed in the following sentence) must file a renewed notice of appearance requesting receipt of documents pursuant to Bankruptcy Rule 2002. After the Effective Date, parties in interest are authorized to limit the list of parties in interest receiving notice of documents pursuant to Bankruptcy Rule 2002 to the Office of the United States Trustee, the Debtor, the Plan Administrator and its counsel, the Receivables Lenders and those Creditors who have filed such renewed requests; *provided, however*, that parties in interest also shall serve those parties directly affected by, or having a direct interest in, the particular filing. Notice given in accordance with the foregoing procedures shall be deemed adequate pursuant to the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

60.     Term of Injunctions or Stays. The injunctions contained in the Plan, including, but not limited to those provided in Article VII of the Plan, are hereby authorized, approved, and binding on all Persons and Entities described therein. Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation

8260639

(Page | 57)

| | |
|---|---|
| Debtor: | FLAGSHIP RESORT DEVELOPMENT CORPORATION |
| Case No.: | 25-15047 (JNP) |
| Caption of Order: | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) APPROVING THE SECOND AMENDED DISCLOSURE STATEMENT ON A FINAL BASIS, AND (II) CONFIRMING THE FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORP. PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE |

Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

61.    <u>No Waiver</u>. The failure to specifically include or refer to any particular provision of the Plan in this Confirmation Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

8260639

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

**PORZIO, BROMBERG & NEWMAN, P.C.**
100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile
Warren J. Martin, Jr., Esq. (wjmartin@pbnlaw.com)
Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)
Christopher P. Mazza, Esq. (cpmazza@pbnlaw.com)

*Counsel to Debtor and Debtor-In-Possession*

| | |
|---|---|
| In re: | Chapter: 11 |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION,[1] | Case No.: 25-15047 (JNP) |
| Debtor. | |

# FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT DEVELOPMENT CORPORATION PURSUANT TO CHAPTER 11 OF THE <u>BANKRUPTCY CODE</u>

## NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER WITH RESPECT TO ANY SECURITIES.

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is: Flagship Resort Development Corporation, a New Jersey corporation (1067). The location of the Debtor's service address is: 60 North Maine Avenue, Atlantic City, NJ 08401.

# TABLE OF CONTENTS

**INTRODUCTION**.................................................................................................................. 1

**ARTICLE I**........................................................................................................................... 1

**DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ....................................................................................................... 1

    A.   Defined Terms. ........................................................................................................ 1

**ARTICLE II** ........................................................................................................................ 16

**UNCLASSIFIED CLAIMS** ............................................................................................... 16

    *A.   Administrative Claims.*.......................................................................................... 16

    *B.   Post-Effective Date Fees and Expenses* ............................................................... 18

    *C.   DIP Claims and Receivables Superpriority Claims.*.............................................. 18

    *D.   Priority Tax Claims.*.............................................................................................. 18

    *E.   Statutory Fees.* ...................................................................................................... 18

**ARTICLE III** ...................................................................................................................... 19

**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ................... 19

    *A.   Classification of Claims and Interests.* ................................................................. 19

    *B.   Summary of Classification.* ................................................................................... 19

    *C.   Treatment of Claims and Interests.* ...................................................................... 20

    *D.   Special Provision Governing Unimpaired Claims.*................................................ 23

    *E.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.* ............... 23

    *F.   Subordinated Claims.*............................................................................................ 24

    *G.   Controversy Concerning Impairment.* .................................................................. 24

    *H.   Acceptance or Rejection of the Plan.* ................................................................... 24

**ARTICLE IV** ...................................................................................................................... 24

**MEANS FOR IMPLEMENTATION OF THE PLAN**..................................................... 24

    *A.   General Settlement of Claims* ............................................................................... 24

    *B.   Sources of Consideration for Plan Distributions.*................................................. 25

    *C.   Preservation of Causes of Action.* ....................................................................... 26

    *D.   Plan Administrator.*............................................................................................... 26

    *E.   Cancellation of Existing Securities.*..................................................................... 28

    *F.   Cancellation of Liens.* .......................................................................................... 28

    *G.   Vesting of Assets in the Post-Effective Date Debtor.* ........................................... 29

    *H.   Continuing Existence.* .......................................................................................... 29

    *I.   Indemnification.* ................................................................................................... 29

i

J.    Title to Accounts. ................................................................................................ 29

K.    Effectuating Documents; Further Transactions. ............................................... 29

L.    Direction to Parties. .......................................................................................... 30

M.    Exemption from Certain Taxes and Fees. .......................................................... 30

N.    Debtor's Directors, Officers, and Managers. ................................................... 30

O.    Closing of the Chapter 11 Case. ....................................................................... 30

P.    Dissolution of Creditors' Committee. ............................................................... 31

Q.    No Discharge. .................................................................................................... 31

R.    Corporate Authority .......................................................................................... 31

S.    Post-Sale Name Change. ................................................................................... 32

**ARTICLE V** .................................................................................................................. 32

**FUNDING AND DISBURSEMENTS** ........................................................................ 32

A.    Cash Payments. .................................................................................................. 32

B.    Automatic Disallowance and Expungement of Certain Claims. ........................ 32

C.    Objections to Claims. ........................................................................................ 32

D.    Distribution for Allowed Claims. ...................................................................... 33

E.    Claims Reserve. ................................................................................................. 33

F.    No Recourse. ...................................................................................................... 33

G.    Interest and Charges. ........................................................................................ 33

H.    Compliance with Tax Requirements. ................................................................. 34

I.    Fractional Dollars; De Minimis Distributions. ................................................ 34

J.    Delivery of Distributions to Holders of Allowed Claims. ................................. 34

K.    Unclaimed Distributions. .................................................................................. 35

L.    No Penalty Claims. ............................................................................................ 35

M.    Setoffs and Recoupment. ................................................................................... 35

N.    Allocation of Distributions Between Principal and Interest. ............................ 35

O.    No Creditor to Receive More than Payment in Full. ........................................ 35

P.    Remaining Cash. ................................................................................................ 36

Q.    Claims Paid or Payable by Third Parties. ........................................................ 36

**ARTICLE VI** ................................................................................................................. 36

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ............................ 36

A.    Rejection of Executory Contracts and Unexpired Leases. ................................ 36

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ...................................... 36

**ARTICLE VII** ............................................................................................................... 38

**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ............................ 38

A.    Settlement, Compromise, and Release of Claims and Interests. ....................... 38

69792/0001-51108263v2
8255838

 B. *Liabilities to, and Rights of, Governmental Units.* ..................................................................38

 C. *Exculpation.* ...................................................................................................................38

 D. *Release* ..........................................................................................................................39

 F. *Term of Injunctions or Stays.* ..........................................................................................43

 G. *Document Retention.* .......................................................................................................43

**ARTICLE VIII**...................................................................................................................43

**CONDITIONS PRECEDENT TO  CONSUMMATION OF THE PLAN** .............................43

 A. *Conditions Precedent to the Effective Date.* .....................................................................44

 B. *Establishing the Effective Date.* .......................................................................................44

**ARTICLE IX**.....................................................................................................................45

**MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN**..............................45

 A. *Modification and Amendments.* .........................................................................................45

 B. *Effect of Confirmation on Modifications.* ..........................................................................45

 C. *Revocation or Withdrawal of Plan.* ..................................................................................45

**ARTICLE X**......................................................................................................................45

**RETENTION OF JURISDICTION** ....................................................................................45

**ARTICLE XI**.....................................................................................................................47

**MISCELLANEOUS PROVISIONS**....................................................................................47

 A. *Immediate Binding Effect.* ................................................................................................47

 B. *Retention of Rights and Causes of Action.* ......................................................................47

 C. *Preservation and Application of Insurance.* .....................................................................48

 D. *Additional Documents.* .....................................................................................................48

 E. *Reservation of Rights.* ......................................................................................................48

 F. *Successors and Assigns.* ...................................................................................................48

 G. *Notices.* ..........................................................................................................................48

 H. *Entire Agreement.* ...........................................................................................................49

 I. *Exhibits.* .........................................................................................................................49

 J. *Severability of Plan Provisions.* .......................................................................................50

 K. *Votes Solicited in Good Faith.* ........................................................................................50

 L. *No Waiver.* .....................................................................................................................50

 M. *Headings.* .......................................................................................................................50

 N. *Conflicts.* ........................................................................................................................50

69792/0001-51108263v2
8255838

## INTRODUCTION

Flagship Resort Development Corp., as debtor and debtor in possession, in the above-captioned Chapter 11 Case proposes this chapter 11 plan.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtor's history, business, and assets, as well as a summary and description of this Plan and certain related matters. The Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

Subject to section 1127 of the Bankruptcy Code, Rule 3019 of the Federal Rules of Bankruptcy Procedure, the Final DIP Order, DIP Loan Agreement and the terms of this Plan, the Debtor, with the consent of the DIP Lenders, reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to substantial consummation.

## ARTICLE I

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A. Defined Terms.

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1. *"Adequate Protection Superpriority Claims"* shall have the meaning set forth in the Final DIP Order.

2. *"Administrative Claim"* means any Claim against the Debtor or its Estate for costs and expenses of administration of this Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) DIP Claims; (c) Claims arising under section 503(b)(9) of the Bankruptcy Code; (d) Adequate Protection Superpriority Claims (d) Allowed Professional Fee Claims; (e) Claims for Fees and Expenses (as defined in the Final DIP Order); (f) Receivables Superpriority Claims; and (g) all fees and charges assessed against the Estate pursuant to section 1930 of chapter 123 of the Judicial Code.

3. *"Administrative Claims Bar Dates"* means (i) October 13, 2025, at 5:00 p.m., prevailing Eastern Time for any Administrative Claim (excluding Professional Fee Claims) arising on or prior to September 12, 2025 as the last date and time by which claimants holding such Administrative Claims must File Claims, and (ii) for any Administrative Claims (excluding Professional Fee Claims) arising after September 12, 2025, such Claims must be Filed by the earlier of: (a) the 15th day of the month following the month in which the Claim arose and (b) 14 days following the Effective Date.

4. *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

1

5.      *"Allowed"* means with respect to any Claim against the Debtor or its Estate (including any Administrative Claim) or any portion thereof: (a) a Claim that is listed on the Debtor's Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Case, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order, including the Final DIP Order, of the Bankruptcy Court; (c) a Claim that is allowed by agreement of the Plan Administrator following the Effective Date; or (d) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or action to reclassify, subordinate, or otherwise limit recovery with respect thereto has been Filed by the Claims Objection Deadline. Except for any Claim that is expressly Allowed herein, any Claim that (i) has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed or (ii) has been assumed by a Buyer is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

6.      *"Amended DIP Budget"* shall have the meaning ascribed in the term sheet attached as <u>Exhibit 1</u> to the Debtor's Motion Seeking Entry of an Order Approving a Settlement Pursuant to Federal Rule of Bankruptcy Procedure 9019 and 11 U.S.C. § 105(a) and Granting Related Relief[Docket No. 249].

7.      *"Approved Budget"* has the meaning ascribed to such term in the Final DIP Order, as the same may be amended, supplemented or extended from time-to-time, with the consent of the DIP Lenders or order of the Court.

8.      *"Asset Purchase Agreement"* means that certain Asset Purchase Agreement by and among Flagship Resort Development Corporation, as seller, and AC Boardwalk Investments LLC, attached as Exhibit 1 to the Sale Order in the Chapter 11 Case.

9.      *"Assets"* means any and all of the right, title and interest of the Debtor in and to property of whatever type or nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtor, as the case may be, including, without limitation, the Debtor's Estate; *provided*, *however*, that any Assets sold to a Buyer, where such sale closes pre-confirmation, shall not be considered Assets of the Estate under this Plan.

10.      *"Atlantic City Liquor License"* means that certain liquor license between the Debtor and the city of Atlantic City, New Jersey for the Flagship Resort, identified as license number 0102-33-213-006.

11.      *"Atlantic Palace Resort"* means the property owned by the Debtor located at 1507 Boardway in Atlantic City, New Jersey.

2

12.     *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtor pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

13.     *"Bankruptcy Code"* means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended.

14.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of New Jersey.

15.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court, in each case, as amended from time to time and applicable to the Chapter 11 Case.

16.     *"Bar Date"* or *"Bar Dates"* means the applicable bar date by which a proof of Claim must be, or must have been, Filed, as established by the Court or any Order of the Court.

17.     *"Bidding Procedures/Sale Motion"* means the *Debtor's Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially all of the Debtor's Assets, (B) Approving Stalking Horse Purchase Agreement, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, (E) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases; and (F) Granting Related Relief, And (II)(A) Authorizing the Debtor to Enter Into an Asset Purchase Agreement, (B) Approving the Asset Purchase Agreement, and (C) Authorizing the Assumption and Assignment of the Assumed Contracts* [Docket No. 13].

18.     *"BOC"* means Banc of California.

19.     *"BOC Loan Agreement"* means that certain *Second Consolidated Amended and Restated Loan and Security Agreement* by and among the Debtor and BOC (as amended, restated or supplemented, and including all related amendments, supplements, certificates, consents and other documents entered into in connection therewith).

20.     *"BOC Prepetition Secured Claims"* means the amounts due and owing by the Debtor to BOC pursuant to the BOC Loan Agreement in an amount not less than $25,402,724.28 as of the Petition Date in outstanding principal, plus interest, premiums, fees or charges thereon, including indemnities and other obligations.

21.     *"Buyer(s)"* means the purchaser(s) of the Debtor's Assets pursuant to any Order(s) entered by the Bankruptcy Court approving the Debtor's Sale Motion.

22.     *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

8255838

23.    *"Cash"* means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

24.    *"Causes of Action"* means, without limitation, any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Challenge; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim; and *subject*, *however*, to any releases provided in this Plan, the Confirmation Order, the Sale Order, or any other Final Order of the Bankruptcy Court. For the avoidance of doubt, the Causes of Action shall not include any Causes of Action against the Released Parties.

25.    *"Challenge"* shall have the meaning ascribed to it in the Final DIP Order.

26.    *"Chapter 11 Case"* means the case pending for the Debtor under chapter 11 of the Bankruptcy Code being administered under case number 25-15047 (JNP).

27.    *"Claim"* shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

28.    *"Claims Objection"* means an objection to the allowance of a claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any Bankruptcy Court order regarding omnibus claims objections.

29.    *"Claims Objection Deadline"* means, subject to any extension, the date that is the first Business Day that is at least one hundred eight (180) days after the Effective Date. For the avoidance of doubt, the Claims Objection Deadline may be extended one or more times by order of the Bankruptcy Court and applies to all Claims unless previously allowed pursuant to a Final Order, including the Final DIP Order.

30.    *"Claims Register"* means the register managed by the Notice, Claims and Balloting Agent reflecting Filed Proofs of Claim.

31.    *"Class"* means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtor as set forth in Article III.

32.    *"Colebrook"* means Colebrook Financial Company.

33.    *"Colebrook Loan Agreement"* means that certain *Seventh Amended and Restated Revolving Loan and Security Agreement* by and between the Debtor and Colebrook (as amended, restated or supplemented, and including all related documents entered into in connection therewith).

4

34. **"Colebrook Prepetition Secured Claims"** means the amounts due and owing by the Debtor to Colebrook pursuant to the Colebrook Loan Agreement in an amount not less than $15,122,233.99 as of the Petition Date in outstanding principal, plus interest, premiums, fees or charges thereon, including indemnities and other obligations.

35. **"Collateral"** means any property or interest in property of the Debtor or the Estate, as applicable, subject to a Lien to secure the payment or performance of a Claim, which Lien is not avoided under the Bankruptcy Code or applicable state laws.

36. **"Commercial Tort Claims"** means a claim arising in tort with respect to which: the claimant is an organization; or the claimant is an individual and the claim: (i) arose in the course of the claimant's business or profession; and (ii) does not include damages arising out of personal injury to or the death of an individual.

37. **"Confirmation"** means the entry of the Confirmation Order on the docket of this Chapter 11 Case.

38. **"Confirmation Date"** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of this Chapter 11 Case.

39. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

40. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

41. **"Consummation"** means the occurrence of the Effective Date.

42. **"Continuing Trade Vendor"** means any vendor or contract counterparty that continues to service a Buyer as the purchaser of the Debtor's assets in a manner satisfactory to a Buyer.

43. **"Continuing Trade Vendor Claim"** means the prepetition Claims against the Debtor of any vendor or counterparty that will continue to service a Buyer as the purchaser of the Debtor's assets in a manner satisfactory to a Buyer.

44. **"Cure"** means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtor's defaults under an Executory Contract or an Unexpired Lease assumed or assumed and assigned by the Debtor under section 365 of the Bankruptcy Code amounts, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

45. **"Creditor"** has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

46. **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Case by the Office of the United States Trustee by the *Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 86].

8255838

47.    *"D&O Party"* means all current and former directors, officers, or managers of the Debtor in their respective capacities as such.

48.    *"Debtor Releases"* means the releases set forth in Article VII.D.1. of the Plan.

49.    *"Debtor"* means Flagship Resort Development Corp. as a debtor and debtor in possession in the Chapter 11 Case.

50.    *"DIP Agent"* has the meaning ascribed to in the Final DIP Order.

51.    *"DIP Claim"* means any Claim in respect of the DIP Obligations (as defined in the Final DIP Order) owed by the Debtor pursuant to the Final DIP Order and/or the Modified DIP Order.

52.    *"DIP Collateral"* has the meaning ascribed to such term in the Final DIP Order and/or the Modified DIP Order.

53.    *"DIP Documents"* has the meaning ascribed to such term in the Final DIP Order and/or the Modified DIP Order.

54.    *"DIP Facility"* has the meaning ascribed to such term in the Final DIP Order and/or the Modified DIP Order.

55.    *"DIP Lenders"* means Banc of California and Colebrook Financial as "Lenders", as such term is defined in the Final DIP Order and/or the Modified DIP Order.

56.    *"DIP Loan Agreement"* has the meaning ascribed to such term in the Final DIP Order and/or the Modified DIP Order.

57.    *"Disallowed"* means any Claim or any portion thereof that (i) has been disallowed by a Final Order, (ii) is Scheduled as zero or as contingent, disputed or unliquidated and as to which no proof of claim has been Filed or deemed Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or otherwise deemed Filed under applicable law or the Plan, (iii) is not Scheduled and as to which no proof of claim has been deemed Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any order or otherwise deemed Filed under applicable law or the Plan, (iv) has been withdrawn by agreement of the Debtor and the holder thereof or (v) has been withdrawn by the holder thereof.

58.    *"Disclosure Statement"* means the Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. pursuant to Chapter 11 of the Bankruptcy Code, dated July 1, 2025 [Docket No. 174], as amended, supplemented or modified from time to time (including, but not limited to, the First Amended Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. pursuant to Chapter 11 of the Bankruptcy Code, dated August 8, 2025 [Docket No. 261], and the Second Amended Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corp. pursuant to Chapter 11 of the Bankruptcy Code, dated August 9, 2025 [Docket No. 272], including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

59.    ***"Disclosure Statement Motion"*** means the *Debtor's Motion for Entry of an Order (I) Approving the Disclosure Statement; (II) Approving the Form of Ballots and Proposed Solicitation and Tabulation Procedures; (III) Fixing the Voting Deadline with Respect to the Debtor's Chapter 11 Plan; (IV) Fixing the Last Date for Filing Objections to the Chapter 11 Plan; and (V) Scheduling a Hearing to Consider Confirmation of the Plan* [Docket No. 176].

60.    ***"Disclosure Statement Order"*** means the order granting the Disclosure Statement Motion.

61.    ***"Disputed"*** means, with respect to any Claim, any Claim or any portion thereof that is not yet Allowed or Disallowed.

62.    ***"Distributable Cash"*** means the Cash on hand of the Debtor or, after the Effective Date, the Plan Administrator, available for distribution.

63.    ***"Distribution Date"*** means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable after the date on which such Claim becomes Allowed.

64.    ***"Effective Date"*** means, with respect to the Plan, the date that is a Business Day selected by the Debtor, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

65.    ***"Entity"*** means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

66.    ***"Estate"*** means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

67.    ***"Excluded Party"*** means each of the following: (i) Bruce Kaye, (ii) Deborah Kaye, (iii) the Deborah Kaye Revocable Trust, (iv) the Bruce Kaye Revocable Trust, (v) the Bruce Kaye Dynasty Trust, (vi) Jason Kaye, (vii) AEGIS Trust Company, (viii) Robert Lesser; and (ix) except for (a) the Released Parties identified in Art. I(A)(127)(b)-(h) and each Related Party of each Entity in Art. I(A)(127)(b)-(h), and (b) Kevin Jones, Roxanne Passarella and the Management Companies, recipients or transferees of property of the Debtor's estate prepetition that are set forth in the Schedules and may be subject to an Avoidance Action.

68.    ***"Exculpated Party"*** means collectively, and in each case in its capacity as such: (a) the Debtor and Post-Effective Date Debtor; (b) the Creditors' Committee; and (c) with respect to the foregoing clauses (a) and (b), each such Entity's current and former control persons, equity holders (regardless of whether such interests are held directly or indirectly), principals, members, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, but only to the extent that such party served in such a capacity during the Chapter 11 Case.

7

69.     ***"Executory Contract"*** means a contract to which the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

70.     ***"File," "Filed,"*** or ***"Filing"*** means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

71.     ***"Final DIP Order"*** means the *Final Order (I) Authorizing Debtor to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral and Affording Adequate Protection, (III) Granting Liens and Providing Superpriority Administrative Expense Status (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 124].

72.     ***"Final Receivables Order"*** means the *Final Order (I) Authorizing Debtor to Obtain Post-Petition Financing Pursuant to the Existing Receivables Facilities, (II) Modifying Same and the Automatic Stay, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Docket No. 120], as may be amended or supplemented.

73.     ***"Final Distribution"*** means the distribution under this Plan which, (a) after giving effect to such distribution, results in remaining assets, including cash, of a value of less than $20,000 or (b) the Bankruptcy Court determines that such distribution is the Final Distribution.

74.     ***"Final Order"*** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek *certiorari* has expired and no request for reconsideration or relief from judgment, appeal, or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the reconsideration, relief from judgment, new trial, re-argument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

75.     ***"Flagship Resort"*** means the property owned by the Debtor located at 60 North Maine Avenue in Atlantic City, New Jersey.

76.     ***"General Unsecured Claim"*** means any Claim against the Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) not an Administrative Claim, a Professional Fee Claim, a DIP Claim, a Receivables Superpriority Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Priority Claim, an Other Secured Claim, or an Interest.

77.     ***"Global Resolution"*** means the global settlement reached between the Debtor, DIP Lenders/Receivables Lenders, Committee, Management Companies, Kevin Jones and Roxanne Passarella, and Buyer on the terms outlined in the Motion to Approve Compromise or Settlement under Rule 9019 [Docket No. 249].

78.     ***"Governmental Claim"*** means any Claim against the Debtor Filed by a Governmental Unit.

8255838

79.    ***"Governmental Unit"*** means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

80.    ***"Holder"*** means any Entity that holds a Claim or Interest, as applicable.

81.    ***"Impaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

82.    ***"Interests"*** means any equity security in the Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtor together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

83.    ***"Interim Compensation Order"*** means the *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 159].

84.    ***"Judicial Code"*** means title 28 of the United States Code, 28 U.S.C. §§ 1-4001.

85.    ***"Lien"*** has the same meaning as set forth in section 101(37) of the Bankruptcy Code.

86.    ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

87.    ***"Management Companies"*** means, collectively, First Resorts Management Company Inc., a New Jersey corporation, Fantasea Resorts Management Co., Inc., a New Jersey corporation, BKRP, Inc.; a New Jersey corporation, and Boardwalk Management, LLC, a New Jersey limited liability company.

88.    ***"Maximum Unused Funds Reserve"*** means $330,000.00 of Unused Funds.  For the avoidance of doubt, the Maximum Unused Funds Reserve is inclusive of the Minimum Unused Funds.

89.    ***"Minimum Unused Funds"*** means a minimum of $250,000.00 of Unused Funds remaining in the Debtor's estate on the Effective Date.  If the Debtor does not have $250,000.00 of Unused Funds remaining on the Effective Date, the Receivables Lenders shall contribute an amount necessary to ensure the Minimum Unused Funds total $250,000.00 in accordance with their Pro Rata Share (as defined in the DIP Loan Agreement).

90.    ***"Modified DIP Motion"*** means the *Motion to Enter Into Second Amendment to Senior Secured Superpriority Debtor in Possession Loan and Security Agreement to (I) Increase Borrowing and (II) Extend Maturity Date filed by Debtor Flagship Resort Development Corporation* filed on August 3, 2025 [Docket No. 238].

91.    ***"Modified DIP Order"*** means the Order granting the Modified DIP Motion.

8255838

92.    ***"Net Distributable Proceeds"*** means an amount between $400,000.00 and $480,000.00, consisting of (i) the Minimum Unused Funds, (ii) the Purchaser Contribution, and (iii) any Unused Funds up to the up to the Maximum Unused Funds Reserve.

93.    ***"Notice, Claims and Balloting Agent"*** means Kroll Restructuring Administration LLC.

94.    ***"Notice of Effective Date"*** means a notice to be Filed with the Bankruptcy Court by the Debtor upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article VIII of the Plan.

95.    ***"Order"*** means an order or judgment of the Bankruptcy Court as entered on the docket of the Bankruptcy Court in the Chapter 11 Case.

96.    ***"Ordinary Course Professional Order"*** means the *Amended Order Pursuant to Sections 105(a), 327, 328, 330, and 363(c)(1) of the Bankruptcy Code Authorizing the Debtor to Retain, Employ and Compensate Certain Professionals Utilized by the Debtor in the Ordinary Course of Business* [Docket No. 182].

97.    ***"Other Priority Claims"*** means any Claim against the Debtor, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

98.    ***"Other Secured Claims"*** means any Secured Claim that is not a DIP Claim, Receivables Superpriority Claim, or Secured Tax Claim.

99.    ***"Ownership Associations"*** means Flagship Condominium Owners Association, LaSammana Condominium Owners Association, Royal Suites Interval Owners Association, and Atlantic Palace Condominium Owners Association.

100.    ***"Ownership Association Claims"*** means any Claim held by the Ownership Associations.

101.    ***"Palmer Litigation Bond"*** means that cash deposit in lieu of a supersedeas bond posted by the Debtor in the amount of $1,775,000 related to the judgment entered in the case styled *Palmer v. Flagship Resort Development Corp. d/b/a Fantasea Resorts*, No. A-3287-22 (N.J. Super. Ct. App. Div.).

102.    ***"Person"*** means a person as such term is defined in section 101(41) of the Bankruptcy Code.

103.    ***"Petition Date"*** means May 10, 2025, the date on which the Debtor commenced the Chapter 11 Case.

104.    ***"Plan"*** means this Fourth Amended Plan of Liquidation of Flagship Resort Development Corp. Pursuant to Chapter 11 of the Bankruptcy Code (as further modified, amended or supplemented from time to time).

105. *"Plan Administrator"* means a Person identified as the Plan Administrator in the Plan Supplement.

106. *"Plan Administrator Agreement"* means the agreement between the Debtor and the Plan Administrator as the same may be amended from time to time in accordance with its terms, filed as part of the Plan Supplement and approved pursuant to the Confirmation Order.

107. *"Plan Administrator Wind-Down and Expense Reserve"* means the reserve established on or before the Effective Date in an amount sufficient to fund the budgeted Wind-Down Costs and Expenses, including, but not limited to, the compensation payable to the Plan Administrator and its employees and professionals, in an amount to be set forth in the Plan Supplement (subject to the Plan Administrator Agreement). The Plan Administrator Wind-Down and Expense Reserve shall be funded by the Net Distributable Proceeds.

108. *"Plan Supplement"* means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, as filed with the *Notice of Filing of Plan Supplement* [Docket No. 300], as may be amended, modified, or supplemented from time to time.

109. *"Porzio"* means Porzio, Bromberg & Newman, P.C. counsel for the Debtor.

110. *"Post-Effective Date Debtor"* means the Debtor, from and after the Effective Date.

111. *"Priority Tax Claim"* means any Claim against the Debtor of the kind specified in section 507(a)(8) of the Bankruptcy Code.

112. *"Professional"* means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

113. *"Professional Fee Claim"* means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; *provided* that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

114. *"Professional Fee Cap"* means the cap of $1,201,400 for the Debtor Professionals, $475,000 for the Committee Professionals, and $660,000 for the BOC and Colebrook Professionals.

115. *"Professional Fee Reserve"* means the reserve established by the Debtor and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Allowed Professional Fee Claims.

116. *"Proof of Claim"* means a written proof of Claim that is Filed against the Debtor in the Chapter 11 Case by the applicable Bar Date.

117.    *"Pro Rata"* means, when used with reference to a distribution of property to Holders of Allowed Claims in a particular Class or any other specified group of Claims pursuant to this Plan, proportionately, so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of the amount of property to be distributed on account of such Claim to the amount of such Claim is the same as the ratio of the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to the amount of all Allowed Claims in such Class or group of Claims. Until all Disputed Claims in a Class are resolved, Disputed Claims shall be treated as Allowed Claims in their face amount for purposes of calculating Pro Rata distribution of property to Holders of Allowed Claims in such Class.

118.    *"Purchaser Contribution"* means $150,000.00 paid by Kevin Jones, Roxanne Passarella and the Management Companies.

119.    *"Quarterly Fees"* means all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code.

120.    *"Receivables"* has the meaning ascribed to it in the Final Receivables Order.

121.    *"Receivables Facility" or "Receivables Facilities"* has the meaning ascribed to such term in the Final Receivables Order.

122.    *"Receivables Lenders"* means Banc of California and Colebrook Financial Company.

123.    *"Receivables Liens"* has the meaning ascribed to such term in the Final Receivables Order.

124.    *"Receivables Superpriority Claim"* means any Claim in respect of the Receivables Facility owed by the Debtor under the Final Receivables Order.

125.    *"Rejection Claim"* means a Claim against the Debtor arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

126.    *"Related Party"* means each of, and in each case in its capacity as such, current directors, managers, officers, committee members, board members of the Debtor, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, financial advisors, attorneys, (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; provided, however, that notwithstanding the foregoing or anything herein to the contrary, no person that is not a Released Party shall be a Related Party under the Plan.

127.    *"Released Party"* means collectively, and in each case solely in its capacity as such: (a) the Debtor; (b) the DIP Agent; (c) BOC, in its capacity as DIP Lender; (d) Colebrook, in its

12

8255838

capacity as DIP Lender (e) BOC, in its capacity as Receivables Lender (f) Colebrook, in its capacity as Receivables Lender, (g) the Committee and each of its members; and (h) each Related Party of each Entity in clause (a) through this clause (g), but not including any Excluded Party.

128.   **"Releasing Party"** means collectively, and each solely in its capacity as such: (a) the Debtor; (b) the Post-Effective Date Debtor; (c) the DIP Agent; (d) BOC, in its capacity as DIP Lender; (e) Colebrook, in its capacity as DIP Lender; (f) BOC, in its capacity as a Receivables Lender; (g) Colebrook, in its capacity as a Receivables Lender; (h) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (i) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (j) all Holders of Claims or Interests who vote to accept or reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (k) each current and former Affiliate of each Entity in clause (a) through (k); and (l) each Related Party of each Entity in clause (a) through (k) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable law; *provided* that, for the avoidance of doubt, an Entity in clause (a) through clause (k) shall not be a Releasing Party if it: (x) has not received a ballot or non-voting status form due to the same being returned as undeliverable; or (y) elects to opt out of the releases contained in the Plan; or (z) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation order is entered.

129.   **"RETA/CFA Claims"** means any New Jersey Real Estate Timeshare Act (RETA) and/or New Jersey Consumer Fraud Act (CFA) claims against the Debtor, including the actions styled *Keona Palmer, et al., vs. Flagship Resort Development Corporation*, Docket No. ATL-1515-19, *Castellanos et al v Flagship Resort Development Corporation*, Docket No. ATL-L-379-23, and *Michael Lantych, Sherman and Dorothy Norman vs. Flagship Resort Development Corporation, et al*, Docket No. ATL-L-00379-2.

130.   **"Retained Causes of Action"** means any Cause of Action of the Debtor (or the Estate) other than any Cause of Action that (a) is expressly subject to the release and exculpation provisions of this Plan; (b) was sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order(s); or (c) was released by the Debtor or the Estate pursuant to the Final DIP Order or the Sale Order(s).

131.   **"Sale Transactions"** means one or more sales of the Debtor's Assets pursuant to the Asset Purchase Agreements and the Sale Order(s).

132.   **"Sale Order"** means the Order (a) Authorizing the Debtor to Enter Into an Asset Purchase Agreement, (b) Approving the Asset Purchase Agreement, and (c) Authorizing the Assumption and Assignment of the Assumed Contracts entered at Dkt. No. 279 in the Chapter 11 Case.

13

133.    ***"Sales and OPC Licenses"*** means those certain mercantile licenses between the Debtor and the city of Atlantic City, New Jersey to operate the Off-Premise Contact marketing room and the main sales room.

134.    ***"Schedules"*** means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

135.    ***"Secured"*** means when referring to a Claim: (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such pursuant to the Plan.

136.    ***"Solicitation Deadline"*** means three (3) business days after entry of the Disclosure Statement Order.

137.    ***"Solicitation Materials"*** means solicitation materials and documents to be included in the solicitation packages.

138.    ***"Spa License"*** means that certain license between the Debtor and the city of Atlantic City, New Jersey to operate the Aqua Spa located at Atlantic Palace Resort.

139.    ***"Stalking Horse APA"*** means the stalking horse asset purchase agreement between the Debtor and AC Boardwalk Company, LLC, as the same may be amended by the parties, as attached to the Sale Order at Exhibit 1.

140.    ***"Unclaimed Distribution"*** means a Distribution that is not claimed by a Holder of an Allowed Claim on or prior to the Unclaimed Distribution Deadline.

141.    *"**Unclaimed Distribution Deadline**" means ninety (90) days from the date the Plan Administrator makes a Distribution of Cash or other property under the Plan to a Holder of an Allowed Claim.

142.    ***"Unexpired Lease"*** means a lease to which a Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

143.    ***"Unimpaired"*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

144.    ***"Unused Funds"*** means the portion of the DIP Facility remaining and not expended as of the entry of the Modified DIP Order and Confirmation, up to the Maximum Unused Funds Reserve, which shall be allocated to fund the Plan Administrator Wind-Down and Expense Reserve. For the avoidance of doubt, except for any Unused Funds Excess, Unused Funds shall

14

not be used to pay any administrative claims of BOC and Colebrook, other than administrative claims provided for in the Amended DIP Budget, including Professional Fees up to their respective Professional Fee Cap.

145. *"Unused Funds Excess"* shall mean, to the extent there are Unused Funds in excess of the Maximum Unused Funds Reserve, the amount of such excess.

146. *"U.S. Trustee"* means the United States Trustee for Region 3.

147. *"Voting Deadline"* means **September 5, 2025, at 4:00 p.m. (ET).**

148. *"Wind-Down Costs and Expenses"* means the costs and expenses for winding down and dissolving the Debtor and the Debtor's Estate.

      A.     *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated. Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction, action, or event shall or may occur pursuant to the Plan is a day that is not a Business Day, then such transaction, action, or event shall instead occur on the next succeeding Business Day.

      B.     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey,

8255838

without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

### C.   *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

### D.   *No Amendment of Final DIP Order; Consent Rights Preserved.*

Notwithstanding anything else contained in the Plan or the Plan Administrator Agreement, nothing in the Plan or the Plan Administrator Agreement is intended to or shall be deemed to amend, modify, alter or supersede any of the provisions of the Final DIP Order. In the event of any conflict or inconsistency between the Plan on the one hand, and the Final DIP Order on the other, the Final DIP Order shall govern.

## <u>ARTICLE II</u>

## UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

### A. *Administrative Claims.*

1.   <u>Administrative Claims</u>

Except to the extent that a holder of an Allowed Administrative Claim and the Debtor agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim (other than a Professional Fee Claim) shall be (i) paid in full in Cash, subject to the priorities set forth in the Bankruptcy Code, the Final DIP Order and/or the Final Receivables Order, as applicable, on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date, or (ii) solely with respect to the Receivables Superpriority Claims, assumed by a Buyer of the Debtor's Assets but only to the extent provided for in the Final Receivables Order.

Except for Professional Fee Claims, and notwithstanding any prior Filing or Proof of Claim, Claims for payment of Administrative Claims must be or have been Filed and served on or before the applicable Administrative Claims Bar Date pursuant to the procedures set forth in the Confirmation Order and the notice of the occurrence of the Effective Date. Except as otherwise ordered by the Bankruptcy Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such dates shall be forever

16

barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property and such Administrative Claims shall be deemed disallowed as of the Effective Date unless otherwise ordered by the Bankruptcy Court. The burden of proof for the allowance of Administrative Claims remains on the Holder of the Administrative Claims. For the avoidance of doubt, in accordance with the Global Resolution, the Unused Funds from the New DIP Financing shall not be used to pay any administrative claims of BOC and Colebrook, other than administrative claims provided for in the Amended DIP Budget (as defined in, and attached to, the Global Resolution, including for Professional Fees up to their collective Cap).

2.      Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable Order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than forty-five (45) days after the Effective Date; *provided*, *however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order, *provided, further*, that the Professionals of the Debtor, Committee, BOC and Colebrook are subject to a Professional Fee Cap[2]. Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. On the Effective Date, the Professional Fee Reserve shall be transferred by the Debtor to the Plan Administrator to be held for the distribution of Allowed Professional Fee Claims. Upon entry of a Final Order approving any such application for such Professional Fee Claim, the Notice, Claims, and Balloting Agent shall promptly distribute from the Professional Fee Reserve any unpaid portion of such Allowed Professional Fee Claim.

Once payments on account of such Allowed Professional Claims have been made in full, any excess Cash remaining in the Professional Fee Reserve shall be considered Assets of the Post-Effective Date Debtor's Estate for Distribution by the Plan Administrator in accordance with the terms of the Plan. For the avoidance of doubt, (i) to the extent that the Professional Fee Reserve is not sufficient to satisfy in full all Allowed Professional Claims, the remaining balance of such Allowed Professional Claims shall be paid in full from available Cash of the Post-Effective Date Debtor by the Plan Administrator after satisfaction of DIP Claims, Adequate Protection Superpriority Claims and Receivables Superpriority Claims, and (ii) any reasonable fees and expenses incurred by Professionals in connection with preparing fee applications shall be paid from the Professional Fee Reserve.

---

[2] The Professionals for the Committee, the Debtor, BOC, and Colebrook have agreed to waive any Administrative Claims against the Debtor's bankruptcy estate for Professional Fees in excess of the Professional Fee Cap, except to the extent there is an Unused Funds Excess, in which case the Unused Funds Excess shall be distributed pro rata among the Debtor Professionals, the Committee Professionals, and the BOC and Colebrook professionals who would otherwise waive administrative claims against the Debtor's estate due to the Professional Fee Cap, with such Unused Funds excess to be shared *pro rata* based upon the amount of fees incurred above the Professional Fee Cap.

### B. Post-Effective Date Fees and Expenses

Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and, subject to the Plan Administrator Agreement, the Plan Administrator may employ and pay any Professional for services rendered or expenses incurred after the Effective Date in the ordinary course of business without any further notice to, or action, Order, or approval of, the Bankruptcy Court.

### C. DIP Claims and Receivables Superpriority Claims.

To the extent any DIP Claims or Receivables Superpriority Claims are outstanding on the Effective Date, the DIP Claims and Receivables Superpriority Claims shall be Allowed in the full amount due and owing under the DIP Documents, the Final DIP Order, and the Final Receivables Order. Except to the extent that a holder of a DIP Claim or a Receivables Superpriority Claim agrees in writing to a different treatment, each holder of a DIP Claim and a Receivables Superpriority Claim shall receive, in full satisfaction of and in exchange for such DIP Claim or Receivables Superpriority Claim, Cash in an amount equal to such DIP Claim or Receivables Superpriority Claim on the Effective Date. Upon the indefeasible payment in full in cash of all DIP Claims, all Liens and security interests granted to the DIP Agent and/or DIP Lenders, in such capacities, pursuant to the Final DIP Order and/or the DIP Loan Agreement shall be deemed cancelled and shall be of no further force and effect as against the Debtor and the Estate and each Allowed DIP Claim shall be deemed to be fully satisfied, settled, released, and compromised.  Upon the indefeasible payment in full in cash of all Receivables Superpriority Claims, each Allowed Receivables Superpriority Claim shall be deemed fully satisfied, settled, released and compromised.

### D. Priority Tax Claims.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtor, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Debtor or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim against the Debtor becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

### E. Statutory Fees.

All Quarterly Fees payable on or before the Effective Date shall be paid by the Debtor in full in cash on the Effective Date. After the Effective Date, the Debtor, any entity making disbursements on behalf of any Debtor or any Post-Effective Date Debtor, including the Plan

18

Administrator (solely in its capacity as such), or any entity making disbursements on account of an obligation of any Debtor or any Post-Effective Date Debtor, including the Plan Administrator (solely in its capacity as such), shall be jointly and severally liable to pay Quarterly Fees in full in cash when due in this Chapter 11 Case for each quarter (including any fraction thereof) until the earliest of such Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. The Debtor shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11- MOR. After the Effective Date, the Debtor, the Post-Effective Date Debtor, and the Plan Administrator shall cause to be filed with the Bankruptcy Court post-confirmation quarterly reports for this Chapter 11 Case for each quarter (including any fraction thereof) that this Chapter 11 Case is pending, using UST Form 11-PCR. The U.S. Trustee shall not be required to file any proof of claim or any other request(s) for payment with respect to Quarterly Fees in this Chapter 11 Case and shall not be treated as providing any release under the Plan. The provisions of this paragraph shall control notwithstanding any other provision(s) in the Plan to the contrary.

## ARTICLE III

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A. Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtor. All Claims and Interests, except for Administrative Claims and Priority Tax Claims are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

The classification of Claims against and Interests in the Debtor pursuant to the Plan is as set forth below. All of the potential Classes for the Debtor are set forth herein.

*B. Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | BOC Prepetition Secured Claims | Impaired | Entitled to Vote |
| 2 | Colebrook Prepetition Secured Claims | Impaired | Entitled to Vote |
| 3 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 4 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 5 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 6 | Continuing Trade Vendor Claims | Impaired | Entitled to Vote |
| 7 | Other General Unsecured Claims | Impaired | Entitled to Vote |

19

| 8 | Interests | Impaired | Deemed to Reject |

*C. Treatment of Claims and Interests.*

The treatment provided for the holders of Allowed Claims or Allowed Interests within each class is specified below:

1.  <u>Class 1 – BOC Prepetition Secured Claims</u>

*i.   Classification*: Class 1 consists of BOC Prepetition Secured Claims.

*ii.   Treatment*: Each Holder of an Allowed BOC Prepetition Secured Claim shall receive: (a) the assumption of the BOC Prepetition Secured Claim by a Buyer subject to the limitations provided for in the Stalking Horse APA (as may be adopted or further modified by a Buyer), including, *inter alia*, limitations on indemnification obligations, or (b) such other treatment to which BOC may agree, on the Effective Date or as soon as reasonably practicable thereafter.[3] BOC shall not be entitled to any indemnity claim, deficiency claim, or any other residual prepetition claim in Class 6 (Continuing Trade Vendor Claims) or Class 7 (Other General Unsecured Claims) on account of the BOC Prepetition Secured Claims.

*iii.   Voting:* Class 1 is Impaired by the Plan. Holders of BOC Prepetition Secured Claims are entitled to vote to accept or reject the Plan.

2.  <u>Class 2 – Colebrook Prepetition Secured Claims</u>

*i.   Classification*: Class 2 consists of Colebrook Prepetition Secured Claims.

*ii.   Treatment*: Each Holder of an Allowed Colebrook Prepetition Secured Claim shall receive: (a) the assumption of the Colebrook Prepetition Secured Claim by a Buyer subject to the limitations provided for in the Stalking Horse APA (as may be adopted or further modified by a Buyer), including, *inter alia*, limitations on indemnification obligations, or (b) such other treatment to which Colebrook may agree, on the Effective Date or as soon as reasonably practicable thereafter.[4] Colebrook shall not be entitled to any indemnity claim, deficiency claim, or any other residual prepetition claim in Class 6 (Continuing Trade Vendor Claims) or Class 7 (Other General Unsecured Claims) on account of the Colebrook Prepetition Secured Claims.

---

[3] The Stalking Horse APA, which is the only currently binding offer for the Debtor's assets, envisions alteration of the legal rights of the Class 1 claimant: specifically, that the Stalking Horse Bidder is not assuming all of the obligations owed to the Class 1 claimant.  It will not assume any pre-closing indemnity obligations owed under the BOC Loan Agreement.

[4] The Stalking Horse APA, which is the only currently binding offer for the Debtor's assets, envisions alteration of the legal rights of the Class 2 claimant: specifically, that the Stalking Horse Bidder is not assuming all of the obligations owed to the Class 2 claimant.  It will not assume any pre-closing indemnity obligations owed under the Colebrook Loan Agreement.

8255838

*iii.*    *Voting:* Class 2 is Impaired by the Plan. Holders of Colebrook Prepetition Secured Claims are entitled to vote to accept or reject the Plan.

3.    Class 3 – Secured Tax Claims

*i.*    *Classification*: Class 3 consists of all Secured Tax Claims.

*ii.*    *Treatment*: Each Holder of an Allowed Secured Tax Claim shall receive, at the option of the Plan Administrator: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

*iii.*    *Voting:* Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 3 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

4.    Class 4 – Other Secured Claims

*i.*    *Classification:* Class 4 consists of all Other Secured Claims.

*ii.*    *Treatment*: Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, in exchange for full and final satisfaction of each Allowed Other Secured Claim, then (a) each holder of an Allowed Other Secured Claim will either (i) be paid in full in Cash on the Distribution Date; (ii) receive all Collateral in possession of the Debtor securing the respective holder's Allowed Other Secured Claim plus to the extent applicable and Allowed, any post-petition interest required pursuant to section 506(b) of the Bankruptcy Code; or (iii) receive any other treatment rendering such Claim Unimpaired for purposes of the Bankruptcy Code, or (b) such Allowed Other Secured Claim will be reinstated.

*iii.*    *Voting*: Class 4 is Unimpaired by the Plan, and each holder of a Class 4 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Class 4 Other Secured Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Other Priority Claims

*i.*    *Classification*: Class 5 consists of all Other Priority Claims.

*ii.*    *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from

21

the Plan Administrator or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

*iii.* *Voting*: Class 5 is Unimpaired by the Plan, and each holder of a Class 5 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the holders of Class 5 Other Priority Claims are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6 – Continuing Trade Vendor Claims</u>

*i.* *Classification*: Class 6 consists of all Continuing Trade Vendor Claims, including Ownership Association Claims. Holders of Continuing Trade Vendor Claims consist of vendors and other parties presently engaged in ongoing business with the Debtor.

*ii.* *Treatment*: Except to the extent that a Holder of an Allowed Continuing Trade Vendor Claim agrees to less favorable treatment, in exchange for full and final satisfaction of each Allowed Continuing Trade Vendor Claim, each Holder of such Allowed Continuing Trade Vendor Claim shall receive its Pro Rata Share of: (a) the Net Distributable Proceeds remaining after the funding of the Plan Administrator Wind-Down and Expense Reserve, if any, plus (b) 50% of any available proceeds of the Palmer Litigation Bond, and any Retained Causes of Actions, including, but not limited to, Avoidance Actions and Commercial Tort Claims.

*iii.* *Voting*: Class 6 is Impaired by the Plan. Holders of Continuing Trade Vendor Claims are entitled to vote to accept or reject the Plan. The Plan Administrator shall make Distribution(s) as soon as reasonably practicable.

To the extent that the Court determines that the separate classification of Class 6 and Class 7 creditors is inappropriate, all general unsecured creditors will be treated as Class 6 creditors, and each shall receive their Pro Rata Share of: (a) the Net Distributable Proceeds, if any, plus (b) any available proceeds of the Palmer Litigation Bond (contingent upon the success of the pending appeal), and Retained Causes of Actions, including, but not limited to, Avoidance Actions and Commercial Tort Claims.

7.      <u>Class 7 – Other General Unsecured Claims</u>

*i.* *Classification*: Class 7 consists of all General Unsecured Claims other than Continuing Trade Vendor Claims ("<u>Other General Unsecured Claims</u>"), including any RETA/CFA Claims that are unsecured.

*ii.* *Treatment*: Except to the extent that a holder of an Allowed Other General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction of each Allowed Other General Unsecured Claim, each holder of such Allowed Other General Unsecured Claim shall receive its Pro Rata Share of

8255838

50% of any available proceeds of the Palmer Litigation Bond, and any Retained Causes of Actions, including, but not limited to, Avoidance Actions and Commercial Tort Claims.

*iii.*     *Voting:* Class 7 is Impaired by the Plan. Holders of Other General Unsecured Claims are entitled to vote to accept or reject the Plan. The Plan Administrator shall make Distribution(s) as soon as reasonably practicable.

To the extent that the Court determines that the separate classification of Class 6 and Class 7 creditors is inappropriate, all general unsecured creditors will be treated as Class 6 creditors, and each shall receive their Pro Rata Share of: (a) the Net Distributable Proceeds, if any, plus (b) any available proceeds of the Palmer Litigation Bond (contingent upon the success of the pending appeal), and Retained Causes of Actions, including, but not limited to, Avoidance Actions and Commercial Tort Claims.

8.     Class 8 - Interests

*i.*     *Classification*: Class 8 consists of all Interests in the Debtor.

*ii.*     *Treatment*: Holders of Interests in the Debtor will receive no distribution under the Plan, and all Interests shall be cancelled and extinguished.

*iii.*     *Voting*: Class 8 is Impaired by the Plan, and each holder of Class 8 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

D.  *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims or Interests, including all rights of Debtor in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests.

E.  *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in accordance with Article IX of the Plan to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

8255838

*F. Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Plan Administrator reserves the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*G. Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*H. Acceptance or Rejection of the Plan.*

    1.    <u>Voting Classes</u>

Classes 1, 2, 6 & 7 are entitled to vote on the Plan.

    2.    <u>Presumed Acceptance of the Plan</u>

Pursuant the Bankruptcy Code, Classes 3, 4 and 5 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

    3.    <u>Presumed Rejection of the Plan</u>

Class 8 is deemed to have rejected the Plan and is not entitled to vote to accept or reject the Plan.

## <u>ARTICLE IV</u>

## **MEANS FOR IMPLEMENTATION OF THE PLAN**

*A. General Settlement of Claims.*

To the extent provided for by the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, certain of the provisions of the Plan shall constitute a good-faith compromise and settlement of certain Claims, Interests, Causes of Action, and controversies, released, settled, compromised, or otherwise resolved pursuant to the Plan. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019 or Bankruptcy Code § 1123, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Plan Administrator may compromise and settle Claims against the Debtor and its Estate and Causes of Action against other Entities.

8255838

B.  *Sources of Consideration for Plan Distributions.*

1.      Allowed Claims and any amounts necessary to wind down the Debtor's Estate shall be paid from the Debtor's Assets, subject to the limitations and qualifications described herein.

2.      The terms of the Sale Order and Asset Purchase Agreement shall be incorporated into and effectuated, implemented and closed pursuant to this Plan as follows:

  i.      Upon entry of the Confirmation Order by the Bankruptcy Court, all matters and transactions authorized under the Sale Order, and any documents in connection therewith, shall be deemed authorized and approved to be effectuated pursuant to Bankruptcy Code §§ 1123(a)(5) and 1123(b), thereby superseding the Court's prior authorization of the Sale Transaction pursuant to Bankruptcy Code § 363, to the extent modified by this Plan.

  ii.     Upon entry of the Confirmation Order, Article 8.1 of the Asset Purchase Agreement is deemed modified to provide that closing is conditioned upon entry of the Confirmation Order authorizing the sale to be consummated in connection with the Plan pursuant to Bankruptcy Code §§ 1123(a)(5) and 1123(b), and that the Sale Transaction will be consummated on or before the Effective Date in furtherance of the Plan.

  iii.    The Debtor is authorized to execute and deliver, and to consummate the transactions contemplated by the Sale Transaction, Sale Order, and the Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, rule, or the vote, consent, authorization, or approval of any Entity.

  iv.     All cash proceeds of the Sale Transaction contemplated by the Asset Purchase Agreement, with the exception of the Purchaser Contribution, shall be immediately distributed to the DIP Agent for benefit of the DIP Lenders.  For the avoidance of doubt, the Purchaser Contribution shall remain with the Estate and be held in the Plan Administrator Wind-Down and Expense Reserve.

  v.      All other provisions of the Sale Order approved by the Bankruptcy Court and not otherwise superseded by the terms of the Confirmation Order or this Plan, including the Purchaser Contribution and Releases, shall be deemed incorporated into this Plan.

  vi.     Notwithstanding the foregoing, or anything to the contrary contained in the Plan, the Sale Transaction may be consummated pursuant to the Sale

25

Order irrespective of whether the Plan is confirmed by the Confirmation Order or otherwise.

### C.  Preservation of Causes of Action.

Any and all Causes of Action that are not expressly released or waived under this Plan or previously sold in any Sale Transaction, including Avoidance Actions and Commercial Tort Claims which have been expressly preserved pursuant to the Final DIP Order and the Global Resolution, are reserved and preserved and vest in the Post-Effective Date Debtor on the Effective Date. No Person may rely on the absence of a specific reference in this Plan or the Plan Supplement to any Cause of Action against it as any indication that the Post-Effective Date Debtor (through the Plan Administrator) will not pursue any and all available Causes of Action against such Person. The Debtor and the Plan Administrator expressly reserve all Causes of Action, including Avoidance Actions and Commercial Tort Claims, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action, Avoidance Actions, or Commercial Tort Claims upon, after, or as a consequence of confirmation or consummation of this Plan.

### D.  Plan Administrator.

#### 1.  <u>Appointment of Plan Administrator</u>.

On the Effective Date, the Plan Administrator, who shall be selected by the Creditors' Committee, in its sole discretion, shall be appointed and thereafter serve in accordance with this Plan. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. As part of the Plan Supplement, the Debtor will identify the Plan Administrator and the terms of the Plan Administrator's compensation.

#### 2.  <u>Powers of Plan Administrator</u>.

The Plan Administrator shall, in addition to any powers and authority specifically set forth in other provisions of the Plan or the Plan Administrator Agreement, be empowered to:

(i)    perform transition services necessary in accordance with the Sale Order and Asset Purchase Agreement, including transitioning the Debtor's Atlantic City Liquor License for the Flagship Resort, its Spa License for the Atlantic Palace Resort, as well as the Debtor's additional sales and OPC licenses to the Buyer, including but not limited to maintaining such operations and retaining and paying such employees and contractors as are necessary to transition these licenses to the Buyer, provided that Buyer shall be responsible for paying or reimbursing the Plan Administrator for all such expenditures such that the operation of assets for the benefit of the Buyer, during the transition period, is net neutral to the estate. For the avoidance of doubt, the Plan Administrator shall not replace or be a successor to the Governing Body of the Debtor solely as it pertains to the management and operation of the Atlantic City Liquor License;

26

(ii)    effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan;

(iii)    establish, as necessary, disbursement accounts for the deposit and distribution of all amounts distributed under the Plan;

(iv)    make Distributions in accordance with the Plan;

(v)    except to the extent Claims have been previously Allowed, control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtor;

(vi)    employ and compensate individuals or professionals to represent it with respect to its responsibilities;

(vii)    assert any of the Debtor's claims, Causes of Action, rights of setoff, or other legal or equitable defenses;

(viii)    exercise reasonable business judgment to direct and control the wind down, liquidation, sale and/or abandoning of the remaining assets of the Debtor under the Plan and in accordance with applicable law as necessary to maximize distributions to holders of Allowed Claims;

(ix)    administer each Debtor's tax obligations, including (a) filing tax returns and paying tax obligations, (b) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under section 505(b) of the Bankruptcy Code for all taxable periods of such Debtor ending after the Petition Date through the liquidation of such Debtor as determined under applicable tax laws, and (c) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(x)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtor that are required under the Plan, by any Governmental Unit or applicable law; and

(xi)    exercise such other powers as may be vested in the Plan Administrator by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Plan Administrator to be necessary and proper to implement the provisions hereof.

3.    <u>Wind-Down of the Debtor</u>.

   i.    *Creation of the Plan Administrator Wind-Down and Expense Reserve*

On or before the Effective Date, the Debtor shall establish the Plan Administrator Wind-Down and Expense Reserve, which shall be funded in accordance with the terms of the Global Resolution, and such account shall be administered by the Plan Administrator in his or her sole discretion. The amount used to fund the Plan Administrator Wind-Down and Expense Reserve

27

shall be used to pay for the expenses of winding down the Estate in accordance with the laws of the country under which each is organized and governed. The Plan Administrator, subject to the terms and conditions of this Plan, shall wind-down the Estate as expeditiously as reasonably practicable. After the Estate is wound-down and all expenses of the Plan Administrator have been paid, any remaining Cash in the Plan Administrator Wind-Down and Expense Reserve shall be treated as Net Distributable Proceeds for Distributions pursuant to this Plan.

4.      <u>Post-Effective Date Expenses of the Plan Administrator</u>.

The Plan Administrator shall receive reasonable compensation for services rendered pursuant to the Plan without further Bankruptcy Court order. In addition, the amount of reasonable fees, costs, and expenses of the Plan Administrator on or after the Effective Date (including, without limitation, reasonable attorney and professional fees and expenses) may be paid without further Bankruptcy Court order. The Plan Administrator shall be paid from any reserves set aside for such fees, costs, and expenses of the Plan Administrator, including the Plan Administrator Wind-Down and Expense Reserve, as further set forth in the Plan Administrator Agreement. Any amounts remaining in the reserves shall be distributed in accordance with the provisions of the Plan.

5.      <u>Plan Administrator Agreement</u>.

A form of the Plan Administrator Agreement shall be filed as part of the Plan Supplement.

E.   *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, and purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor related thereto shall be cancelled and deemed null and void; *provided*, *however*, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim against the Debtor shall continue in effect solely for purposes of enabling holders of Allowed Claims to receive distributions under the Plan as provided herein; *provided further*, *however*, that the preceding provision shall not result in any expense or liability to the Debtor, except to the extent set forth in or provided for under this Plan.

F.   *Cancellation of Liens.*

Except as otherwise specifically provided herein, upon the full and indefeasible payment of a Secured Claim in accordance with the Plan, any Lien securing such Secured Claim shall be deemed released, and the holder of such Secured Claim shall be authorized and directed to release any collateral or other property of the Debtor held by such holder and to take such actions as may be requested by the Plan Administrator, to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Plan Administrator.

8255838

### G.  Vesting of Assets in the Post-Effective Date Debtor.

As of the Effective Date, pursuant to the provisions of sections 1141(b) and (c) of the Bankruptcy Code, all Assets shall vest in the Post-Effective Date Debtor free and clear of all Claims, Liens, encumbrances, charges, Interests, and other interests, except as otherwise expressly provided in the Plan or the Confirmation Order, and subject to the terms and conditions of the Plan and the Confirmation Order.

### H.  Continuing Existence.

From and after the Effective Date, the Post-Effective Date Debtor shall continue in existence unless and until dissolved by the Plan Administrator in accordance with the provisions of the Plan.

### I.  Indemnification.

The Debtor and its Estate, to the extent still in existence, shall indemnify and hold harmless the Plan Administrator, and his or her employees, professionals, agents, and representatives, in each case in their capacity as such, from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and expenses, arising out of or due to their acts or omissions related to the performance of his or her duties under this Plan; provided, however, that no such indemnification shall be made to such entities for such acts or omissions constituting actual fraud, gross negligence, or willful misconduct.

### J.  Title to Accounts.

Title to all of the Debtor's bank and other accounts shall vest in the Post-Effective Date Debtor, effective as of the Effective Date, without any further order of the Bankruptcy Court or further action on the part of any Person or Entity. On and after the Effective Date, all such accounts shall be deemed to be accounts in the name of the Post-Effective Date Debtor without any further action by any Person or Entity or any further order of the Bankruptcy Court.

### K.  Effectuating Documents; Further Transactions.

On the Effective Date, all matters and actions provided for under the Plan that would otherwise require approval of the directors and officers, or members or managers of the Debtor shall be deemed to have been authorized and effective in all respects as provided herein and shall be taken without any requirement for further action by the directors and officers, members and managers of the Debtor. The Debtor or the Plan Administrator, as applicable, is authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

29

8255838

*L.  Direction to Parties.*

From and after the Effective Date, the Plan Administrator may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver or to join in the execution of delivery of any instruments required to effect a transfer of property contemplated by or necessary to effectuate this Plan, and to perform any other act that is necessary for the consummation of this Plan, pursuant to section 1142(b) of the Bankruptcy Code.

*M.  Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property (including all transfers in connection with the Sale Transaction contemplated by the Asset Purchase Agreement, as approved by the Sale Order, to the extent consummated in accordance with and in furtherance of the Plan) pursuant hereto shall not be subject to any stamp tax, recording tax, personal property tax, real estate transfer tax, sales tax, use tax, privilege tax, or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local government officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to (1) the creation of any mortgage, deed of trust, lien or other security interest; (2) the assuming and assigning any contract, lease or sublease; (3) any transaction authorized by this Plan; (4) any sale of an Asset by the Plan Administrator in furtherance of the Plan, including but not limited to any sale of personal or real property and (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with this Plan.

*N.  Debtor's Directors, Officers, and Managers.*

On the Effective Date, all officers, directors, and managers of the Debtor shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity. On and after the Effective Date, the Plan Administrator shall serve as the sole officer, sole director, or sole manager of the Debtor, but he or she shall retain and enforce Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims, as the representative of the Estate in his or her capacity as the Plan Administrator under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, or manager of the Debtor. Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

*O.  Closing of the Chapter 11 Case.*

After the Chapter 11 Case has been fully administered, the Plan Administrator shall promptly seek authority from the Bankruptcy Court to close the Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

8255838

*P.  Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve automatically and its members shall be discharged from all rights, duties, responsibilities, obligations and liabilities arising from or related to the Chapter 11 Case or the Plan and under the Bankruptcy Code and applicable law; and (b) the retention or employment of the Creditors' Committee's respective professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

*Q.  No Discharge.*

Notwithstanding any other provision of the Plan or Confirmation Order, pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtor will not receive a discharge.

*R.  Corporate Authority.*

On the Effective Date, the certificates of incorporation, bylaws, operating agreement, and articles of organization, as applicable, of the Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtor or the Plan Administrator, as applicable, to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. Effective as of the Effective Date, all directors, managers, members, and officers of the Debtor shall be discharged, and all such appointments rescinded for all purposes, without any necessity of taking any further action in connection therewith. The Plan Administrator shall act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of incorporation, bylaws, shareholder agreements, and related documents are deemed amended by the Plan to permit and authorize same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall succeed to the powers of the Debtor's directors and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Post-Effective Date Debtor. For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtor or Plan Administrator, as applicable, to continue the employment of any former director, officer, employee, or other agent or representative.  For the avoidance of doubt, the Plan Administrator shall not replace or be a successor to the Governing Body of the Debtor solely as it pertains to the management and operation of the Atlantic City Liquor License.

On the Effective Date, the attorney-client privilege, the attorney work product doctrine and any similar privilege against disclosure, and all other similar immunities (all together, "Privileges") belonging to the Debtor or the Estate that concern or in any way relate to (a) any of the Assets, or that would apply to communications, documents, or records recorded in magnetic, optical, or other form of electronic medium concerning or in any way relating to any Assets, shall vest in the Wind-Down Debtor. The Plan Administrator shall have the sole right to waive Privileges that concern or in any way relate to any of the Assets vesting in the Wind-Down Debtor or that would apply to

31

communications, documents, or electronic records concerning or in any way relating to any such assets.

S.  *Post-Sale Name Change.*

To the extent a Buyer pursuant to any Asset Purchase Agreement acquires the intellectual property rights of the Debtor, including the title, right, and/or use of the Debtor's name, the Debtor or Plan Administrator, as applicable, shall file a motion with the Court authorizing the change of corporate names of the Debtor and change of case caption.

## ARTICLE V

## FUNDING AND DISBURSEMENTS

A.  *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Plan Administrator shall determine in his or her sole discretion.

B.  *Automatic Disallowance and Expungement of Certain Claims.*

On the Effective Date, all Claims filed after the applicable Bar Date that were required to be filed on or in advance of such Bar Date under its terms, shall be expunged and disallowed without any further notice to or action, order, or approval of the Bankruptcy Court.

C.  *Objections to Claims.*

Except as expressly provided herein, the Debtor (before the Effective Date) or the Plan Administrator (on or after the Effective Date), as applicable, shall have the exclusive authority and standing to file, settle, compromise, withdraw, or litigate to judgment any objections to Claims or motions to estimate Claims. From and after the Effective Date, the Plan Administrator shall further have the authority to resolve and settle any and all Claims without approval of the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction to estimate any Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under this Plan (including for purposes of Distributions), and the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

Except as otherwise set forth in Articles II.A.2 above with respect to Professional Fee Claims, any objections to Claims shall be filed and served on or before the Claims Objection

8255838

Deadline, *provided, however*, the Claims Objection Deadline may be extended by the Bankruptcy Court from time to time upon motion and notice by the Plan Administrator.

Except as provided herein or otherwise agreed, any and all holders of Claims Filed after an applicable Bar Date shall not be treated as creditors for purposes of Distribution pursuant to Bankruptcy Rule 3003(c)(2) and the Bar Date Order unless on or before the Confirmation Date such late Claim has been deemed timely Filed by a Final Order. After the Confirmation Date, a proof of claim Filed or amended without the authorization of the Bankruptcy Court shall be automatically Disallowed.

### D. Distribution for Allowed Claims.

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to holders of Allowed Claims shall be made on the Distribution Date. No holder of a Disputed Claim shall be entitled to a distribution from the Plan Administrator, the Post-Effective Date Debtor, the Debtor, or the Estate with respect to such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan.

### E. Claims Reserve.

On any date that Distributions are to be made under the terms of the Plan, the Plan Administrator shall reserve, in his or her discretion, (i) Cash or property equal to 100% of the Cash or property that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, or (ii) such other amount that the Plan Administrator estimates on account of the Disputed Claim. Such Distribution shall be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

### F. No Recourse.

Notwithstanding that the Allowed amount of any particular Disputed Claim is reconsidered under the applicable provisions of the Bankruptcy Code and Bankruptcy Rules or is Allowed in an amount for which after application of the payment priorities established by the Plan there is insufficient value to provide a recovery equal to that received by other holders of Allowed Claims in the respective Class, no Claim holder shall have recourse against the Debtor, Post-Effective Date Debtor, the Estate, the Plan Administrator, or any of their respective professionals, consultants, officers, directors, or members or their successors or assigns, or any of their respective property. Except as specifically stated otherwise in the Plan, nothing in the Plan shall modify any right of a holder of a Claim under section 502(j) of the Bankruptcy Code.

### G. Interest and Charges.

Except with respect to DIP Claims, Receivables Superpriority Claims, BOC Prepetition Secured Claims or Colebrook Prepetition Secured Claims, which shall bear interest at the rate

33

provided for in the DIP Loan Agreement, BOC Loan Agreement or Colebrook Loan Agreement, as applicable, until paid in full, no interest shall accrue or be paid on Allowed Claims.

### H. Compliance with Tax Requirements.

In connection with the Plan, to the extent applicable, the Plan Administrator shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Plan Administrator shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate. The Plan Administrator reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Plan Administrator shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Plan Administrator's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim. To the extent such documentation is not provided within thirty (30) days of the respective Distribution Date, the distribution on such Allowed Claim shall be deemed Unclaimed Distribution.

### I. Fractional Dollars: De Minimis Distributions.

Notwithstanding any other provision of the Plan, the Plan Administrator shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar. In addition, the Plan Administrator shall not be required to make any distribution in an amount less than $100.00. To the extent that such a distribution shall be called for as part of any interim distribution, the Plan Administrator shall establish a reserve for all distributions in the amount of less than $100.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $100.00 or more, make such distribution at such time. The Plan Administrator shall not be required to make any Final Distribution of less than $100.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Plan Administrator Agreement.

### J. Delivery of Distributions to Holders of Allowed Claims.

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Plan Administrator has been notified in writing of a change of address.

8255838

### K.  Unclaimed Distributions.

Any Cash or other property to be distributed under the Plan shall revert to the Plan Administrator or the Debtor, as applicable, if it is not claimed by the Entity on or before the Unclaimed Distribution Deadline. If such Cash or other property is not claimed on or before the Unclaimed Distribution Deadline, (i) the Distribution made to such Entity shall be deemed to be reduced to zero, (ii) all unclaimed property or interests in property shall revert to the Estate automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and (iii) the Claim of any Holder to such property or Interest in property shall be forever barred. In the event of multiple Distributions, an Entity shall not be entitled to subsequent Distributions if it has failed to claim the initially distributed Cash or other property by the Unclaimed Distribution Deadline. In the event that unclaimed funds or property cannot be further disbursed because the administrative costs of distribution effectively interfere with distribution, or all creditors, including administrative claimants, have been paid in full, then the Plan Administrator or the Debtor, as applicable, in their sole and absolute discretion, without need for a further order by the Bankruptcy Court, may pay such funds to the New Jersey Bankruptcy Lawyers Foundation, Inc. (njblf.org).

### L.  No Penalty Claims.

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

### M.  Setoffs and Recoupment.

The Debtor or the Plan Administrator, as the case may be, retain the right, subject to any applicable notice provisions under applicable law, to reduce any Claim by way of setoff in accordance with their books and records.

### N.  Allocation of Distributions Between Principal and Interest.

For Distributions in respect of Allowed General Unsecured Claims, to the extent that any such Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### O.  No Creditor to Receive More than Payment in Full.

Notwithstanding any other provision hereof, no creditor shall receive more than full payment of its applicable Allowed Claim including any interest, costs or fees that may be payable with respect thereto under or pursuant to the Plan.

8255838

*P. Remaining Cash.*

Remaining undistributed cash at the conclusion of the Chapter 11 Case, may be distributed by the Plan Administrator in its sole discretion to the New Jersey Bankruptcy Lawyers Foundation, Inc. (njblf.org).

*Q. Claims Paid or Payable by Third Parties.*

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to the Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A. Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtor; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; (iv) is identified in the Plan Supplement to be assumed under the Plan; (v) has been assumed and assigned to a Buyer of the Debtor's assets; or (vi) is subject to designation rights pursuant to the Stalking Horse APA.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

*B. Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases under this Plan, if any, must be Filed with the Bankruptcy Court within the later of (a) twenty-one (21) days after the service of Notice of the Effective Date, or (b) thirty (30) days after service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto. The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the six clauses set forth in Article VI.A hereof are deemed rejected as of the Effective Date. The Notice of Effective Date also shall set forth the deadline for filing Proofs of Claim with respect to the same. Absent order of the

36

Bankruptcy Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan. Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 5 of the Plan, which information shall be included in the Notice of the Effective Date.

8255838

## ARTICLE VII

## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A. *Settlement, Compromise, and Release of Claims and Interests.*

To the extent provided for by the Bankruptcy Code, and in consideration for the distributions and other benefits provided pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtor or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date.

B. *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C. *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from the Petition Date to the Effective Date from any Cause of Action or any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the DIP Facility, the Disclosure Statement, the Plan, the Plan Supplement and any Sale Transactions, the pursuit of Confirmation, the pursuit of consummation of a Sale Transaction, the administration and implementation of the Plan, the distribution of property under the Plan or any other related agreement, except for Claims related to any act or omission that is determined in a final order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Debtor and its Professionals have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and distribution of consideration pursuant to, the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of**

acceptances or rejections of the Plan or such distributions made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any Claim relating to any post-Effective Date obligations of any party or Entity under the Plan, any Sale Transaction, or any document, instrument, or agreement (including the other documents, instruments and agreements set forth in the Plan Supplement) executed to implement the Plan.  For the avoidance of doubt, Exculpated Parties shall be exculpated exclusively for conduct occurring between the Petition Date and the Effective Date of the Plan.

   D. *Release*[5]

   1.    **Releases by the Debtor**

   In exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each of the Released Parties will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by and on behalf of the Debtor, its Estate, and, if applicable, the Post-Effective Date Debtor, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, from any and all claims and Causes of Action whatsoever (including any Avoidance Actions and any derivative claims asserted or assertable on behalf of the Debtor, its Estate, or the Post-Effective Date Debtor), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, that the Debtor, its Estate, the Post-Effective Date Debtor, if applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons, including Related Parties, claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Estate, the Chapter 11 Case, the Global Resolution, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim, or Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtor and any Released Party, the Receivables Facilities, the distribution of any Cash or other property of the Debtor to any Released Party, the assertion or enforcement of rights or remedies against the Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the Debtor's in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Case, any intercompany transactions, the negotiation and consummation of the

---

[5] Kevin Jones and Roxanne Passarella are the current Co-CEOs of the Debtor.  For the avoidance of doubt and notwithstanding anything herein to the contrary, neither the Plan nor Confirmation Order voids the releases approved via the Sale Order as it pertains to the Purchaser, Kevin Jones, Roxanne Passarella, and the Management Company, and such releases shall remain binding and in full force and effect pursuant to the terms thereof.

any sale of the Debtor's assets, the negotiation, formulation, or preparation of the Plan, Disclosure Statement, Plan Supplement, or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the solicitation of votes with respect to the Plan, the DIP Facility, the DIP Loan Documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

Notwithstanding anything to the contrary in the foregoing, the Debtor does not, pursuant to the releases set forth above, release (i) any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims; (ii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; or (iii) the Excluded Parties. The foregoing does not affect the Debtor's Stipulations and Releases contained in Paragraph 2 of the Final DIP Order, which shall remain in full force and effect.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to implementing the Plan; (ii) in the best interests of the Debtor and all Holders of Claims and Interests; (iii) fair, equitable, and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to any of the Debtor, the Debtor's Estate, or, if applicable, the Post-Effective Date Debtor, asserting any claim or Cause of Action released pursuant to the Debtor Release.

2.    **Consensual Third-Party Releases**

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each of the Released Parties, will be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged, by the Releasing Parties, in each case on behalf of itself and its respective successors, assigns, and representatives and any and all other Persons that may purport to assert any Cause of Action directly or derivatively, by, through, for, or because of the foregoing Persons, including Related Parties, in each case solely to the extent of the Releasing Parties' authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all claims and Causes of Action whatsoever (including any derivative claims, asserted or assertable on behalf of the Debtor or the Estate), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other

40

applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim, Interest, or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor or the Estate, the Chapter 11 Case, the Global Resolution, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among the Debtor and any Released Party, the Receivables Facilities, the distribution of any Cash or other property of the Debtor to any Released Party, the assertion or enforcement of rights or remedies against the Debtor, the restructuring of any Claim or Interest before or during the Chapter 11 Case, the Debtor's in- or out-of-court restructuring efforts, the decision to File the Chapter 11 Case, any intercompany transactions, the negotiation and consummation of the any sale of the Debtor's assets, the negotiation, formulation, or preparation of the Plan, Disclosure Statement, Plan Supplement, or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), the solicitation of votes with respect to the Plan, the DIP Facility, the DIP Loan Documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

Notwithstanding anything to the contrary in the foregoing, the following shall not, pursuant to the releases set forth above, be released:  (i) any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims; (ii) any post-Effective Date obligations of any party of Entity under the Plan, the Confirmation Order, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (iii) the rights of Holders of Allowed Claims to receive distributions under the Plan; or (iv) the Excluded Parties.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases provided in this Article VII.D.2., which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the releases provided in this Article VII.D.2. are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by the Released Parties; (iv) in the best interests of the Debtor and its Estate; (v) fair, equitable, and reasonable; (vi) given and made after due notice and opportunity for hearing; and (vii) a bar to any of the Releasing Parties asserting any claim or Cause of Action released pursuant to this Article VII.D.2.

3.     **Creditors' Committee's Views Regarding Releases.**

The Committee currently supports the releases provided for in the Plan based on the consideration being provided as set forth in further detail in the Global Resolution. Further, the Committee supports the right of Holders of Claims and Equity Interests to determine whether to consent to or opt-out of the Third Party Releases described in Article VIII.D.2. herein by making such determination in connection with the submission of a Ballot or Opt-Out Form.

E.    *Injunction.*

1.    **Temporary Injunction for Debtor**

Pursuant to section 362(c)(1) of the Bankruptcy Code, the automatic stay of any act against property of the Debtor's Estate will continue until such property is no longer property of the Debtor's Estate and pursuant to section 362(c)(2) of the Bankruptcy Code, the stay of any other act described in section 362(a) of the Bankruptcy Code, continues until the earlier of the closure or dismissal of the Chapter 11 Case.  As of the Effective Date, and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or this Order, all Entities that have held, hold or may hold any Interest in the Debtor or a Claim, Cause of Action, or other debt or liability against the Debtor are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Plan Administrator, the Assets, or the Released Parties or their respective financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision through and until the date upon which all remaining property of the Debtor's Estate has been liquidated and distributed in accordance with the Plan and the Plan has been fully administered; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.  For the avoidance of doubt, this Article VII.E.1 shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.

2.    **Injunction as to Non-Debtor Released Parties**

Pursuant to section 362(c)(1) of the Bankruptcy Code, the automatic stay of any act against property of the Debtor's Estate will continue until such property is no longer property of the Debtor's Estate, and pursuant to section 362(c)(2) of the Bankruptcy Code, the stay of any other act described in section 362(a) of the Bankruptcy Code, continues until the earlier of the closure or dismissal of the Chapter 11 Case.  As of the Effective Date, and subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or this Order, all Entities that have held, hold or may hold any Interest in the Debtor

42

or a Claim, Cause of Action, or other debt or liability against the Debtor or against any Released Party that have been released and/or exculpated under Article VII of the Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Plan Administrator, the Assets of the Post-Effective Date Debtor, or the Released Parties (other than the Debtor), or their respective financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (v) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; provided, however, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct. For the avoidance of doubt, this Article VII.E.2 shall not constitute a discharge under section 1141(d) of the Bankruptcy Code.

## F.   Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## G.   Document Retention.

On and after the Effective Date, the Plan Administrator may maintain or dispose of documents in accordance with its discretion; provided however, and notwithstanding anything to the contrary herein or in the Plan Administration Agreement, the Plan Administrator shall File a notice with the Bankruptcy Court to dispose, destroy or abandon any documents of the Debtor or its Estate. Parties in interest shall have fourteen (14) days to respond to such notice. If no responses are Filed the Plan Administrator shall be deemed authorized to dispose, destroy or abandon any documents of the Debtor without further notice or Order of the Bankruptcy Court.

## ARTICLE VIII

## CONDITIONS PRECEDENT TO
## CONSUMMATION OF THE PLAN

8255838

*A. Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

1.      the Bankruptcy Court shall have entered the Confirmation Order, which order shall have become a Final Order;

2.      all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

3.      the Plan Administrator Wind-Down and Expense Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

4.      the Plan Administrator shall be duly appointed, qualified and acting in that capacity;

5.      the Sale Transaction(s) may be incorporated into the Plan, and approved to be consummated and implemented pursuant to the Plan and the Confirmation Order;

6.      Satisfaction and payment in full of all claims and obligations owing under the DIP Facility;

7.      The Sale Transaction(s) shall have been consummated and implemented pursuant to the Plan and the Confirmation Order; and

8.      all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

*B. Establishing the Effective Date.*

Each of the conditions to the Effective Date may be waived, in whole or in part, by the Debtor with the consent of the DIP Agent and in consultation with the Committee, without notice or an Order of the Bankruptcy Court. The calendar date to serve as the Effective Date shall be a Business Day of, on or promptly following the satisfaction or waiver of all conditions to the Effective Date, which date will be selected by the Debtor, after reasonable consultation with the Committee. On or within two (2) Business Days of the Effective Date, the Debtor shall file and serve a notice of occurrence of the Effective Date. Such notice shall contain, among other things, the Administrative Claims Bar Date, the deadline by which Professionals must file and serve any Professional Claims and the deadline to file a proof of claim relating to damages from the rejection of any Executory Contract (including any unexpired lease) pursuant to the terms of the Plan.

## ARTICLE IX

## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

*A.   Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan with the consent of the DIP Lenders, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtor expressly reserves its rights, with the consent of the DIP Lenders, to revoke, withdraw, alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.   Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

*C.   Revocation or Withdrawal of Plan.*

The Debtor reserves the right, with the consent of the DIP Lenders, to revoke or withdraw the Plan before the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtor, any holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtor, any holder or any other Entity.

## ARTICLE X

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation, jurisdiction to:

8255838

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including accrued Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including the amount of cure pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtor's amending, modifying, or supplementing, after the Effective Date, pursuant to Article IX hereof, any assumed Executory Contracts and Unexpired Leases list or the rejected Executory Contracts and Unexpired Leases list; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1146 of the Bankruptcy Code;

5.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

6.      hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

7.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

8.      enter an order concluding or closing the Chapter 11 Case;

9.      hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VII hereof, regardless of whether such termination occurred prior to or after the Effective Date; and

10.      enforce all orders previously entered by the Bankruptcy Court.

Notwithstanding the foregoing, nothing in this Plan shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date. The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code.

8255838

# ARTICLE XI

## MISCELLANEOUS PROVISIONS

### A. *Immediate Binding Effect.*

Subject to Article VIII.A hereof and Bankruptcy Rules 3020(e), 6004(h), or 7062, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtor, the Plan Administrator, and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor each of respective successors and assigns of the foregoing persons and Entities.

### B. *Retention of Rights and Causes of Action.*

Except as provided in the Plan, all present or future rights, claims, or and any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor held on behalf of the Estate or of the Debtor in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law against any Person or Entity and have not been released or sold on or prior to the Effective Date are preserved for the Post-Effective Date Debtor and the Plan Administrator. On the Effective Date, pursuant to section 1123(b)(3) of the Bankruptcy Code, the Plan Administrator and the Post-Effective Date Debtor shall have possession and control of, and shall retain and have the right to enforce and pursue, any and all present or future rights, claims, or and any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims, rights of setoff or recoupment, or other legal or equitable defenses against any Person or Entity and with respect to any rights of the Debtor that arose before or after the Petition Date. The Plan Administrator and the Post-Effective Date Debtor have, retain, reserve, and shall be entitled to assert and pursue all such claims, and any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims, rights of setoff, or other legal or equitable defenses, and all legal and equitable rights of the Debtor not expressly released under the Plan may be asserted after the Effective Date. The Post-Effective Date Debtor or the Plan Administrator, as applicable, may abandon, settle, or release any or all such claims, rights or and any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims, as it deems appropriate without further order of the Bankruptcy Court. In pursuing any claim, right, or Retained Cause of Action, the Plan Administrator, as the representative of the Estate, shall be entitled to the extensions provided under section 108 of the Bankruptcy Code. Except as otherwise provided in the Plan, all and any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims shall survive confirmation and the commencement or prosecution of any Retained Causes of Action, including, but not limited to, Avoidance Actions and Commercial Tort Claims shall not be barred or limited by any estoppel, whether judicial, equitable, or otherwise. Notwithstanding the foregoing, the Post-Effective Date Debtor shall not retain any Claims or Causes of Action released under the Plan against the Released Parties (except that such Claims or Causes of Action may be asserted as a

47

defense to a Claim in connection with the claims reconciliation and objection procedures pursuant to section 502(d) of the Bankruptcy Code or otherwise).

### C.  *Preservation and Application of Insurance.*

The provisions of the Plan shall not diminish or impair in any manner the enforceability of coverage of any insurance policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any D&O Party, or any other Person, including, without limitation, insurance for the Debtor's directors and officers.

### D.  *Additional Documents.*

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### E.  *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor, with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests and each other before the Effective Date. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtor.

### F.  *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

### G.  *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtor shall be in writing. Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

1.      The Debtor:

8255838

Flagship Resort Development Corp.
Attention: Cherie Parks, CFO
Email: cheriep@60north.net

with a mandated copy (which shall not constitute notice) to:

Counsel to Debtor and Debtor in Possession
Porzio, Bromberg & Newman
100 Southgate Pkwy
Morristown, New Jersey 07960
Attention: Warren J. Martin, Esq. and Christopher P. Mazza, Esq.
Telephone: (973) 538-4006
Email: wjmartin@pbnlaw.com; cpmazza@pbnlaw.com

      2.      The Plan Administrator:

Joseph J. DiPasquale
c/o Fox Rothschild LLP
49 Market Street
Morristown, New Jersey 07960
Email: jdipasquale@fosrothschild.com

with a mandated copy (which will not constitute notice) to:

Counsel to the Plan Administrator
Cole Schotz P.C.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Attention: Ryan R. Jareck
Email: rjareck@coleschotz.com

*H. Entire Agreement.*

Except as otherwise indicated, the Plan, the Plan Supplement, the Confirmation Order, and the Global Resolution, which is incorporated by reference in, and will form a part of, the Plan as if set forth herein in its entirety, shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*I. Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://cases.ra.kroll.com/flagship, or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov. To the extent any exhibit or

8255838

document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

### J.   Severability of Plan Provisions.

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall be prohibited from altering or interpreting such term or provision to make it valid or enforceable; *provided*, that at the request of the Debtor, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable, consistent with the original purpose of the term or provision held invalid, void, or unenforceable, and such terms or provisions shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtor. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) non-severable and mutually dependent.

### K.   Votes Solicited in Good Faith.

Once the Confirmation Order becomes a Final Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its agents, representatives, members, principals, shareholders, officers, directors, employees, advisors and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties, individuals or the Debtor will have any liability for the violation of any applicable law, rule or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale or purchase of the Securities offered and sold under the Plan or any previous plan.

### L.   No Waiver.

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtor.

### M.   Headings.

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any matter affects the terms, provisions or interpretation of the Plan.

### N.   Conflicts.

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan, with the exception of the Global Resolution (the "<u>Plan Related Documents</u>") conflict

8255838

with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern. For the avoidance of doubt, notwithstanding anything contained in the Plan Related Documents or the Global Resolution, BOC's and Colebrook's professionals may share in any Unused Funds Excess, if any, as set forth in Footnote 2 herein.

Dated: September 11, 2025                Respectfully Submitted,

                                        FLAGSHIP RESORT DEVELOPMENT
                                        CORPORATION

                                        By:

                                        */s/ Cherie Parks*
                                        Cherie Parks
                                        Chief Financial Officer

51

8255838

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| FLAGSHIP RESORT DEVELOPMENT CORPORATION, [1] | Case No. 25-15047 (JNP) |
| Debtor. | |

**NOTICE OF (A) ENTRY OF THE ORDER (I) APPROVING THE SECOND AMENDED
DISCLOSURE STATEMENT ON A FINAL BASIS AND (II) CONFIRMING THE
FOURTH AMENDED PLAN OF LIQUIDATION OF FLAGSHIP RESORT
DEVELOPMENT CORPORATION PURSUANT TO CHAPTER 11 OF THE
BANKRUPTCY CODE; (B) THE EFFECTIVE DATE THEREOF; AND (C) CERTAIN
DEADLINES**

**TO CREDITORS, HOLDERS OF CLAIMS AND INTERESTS, AND PARTIES IN
INTEREST, PLEASE TAKE NOTICE THAT:**

1.     <u>Confirmation of the Plan</u>. On September __, 2025, the Honorable Judge Jerrold N. Poslusny, Jr., United States Bankruptcy Judge for the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>"), entered the *Findings of Fact, Conclusions of Law, and Order (I) Approving the Second Amended Disclosure Statement on a Final Basis and (II) Confirming the Fourth Amended Plan of Liquidation of Flagship Resort Development Corporation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. __] (the "<u>Confirmation Order</u>"), (i) approving on a final basis the *Second Amended Disclosure Statement for the Plan of Liquidation of Flagship Resort Development Corporation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 272] (as further modified, revised, supplemented and amended, the "<u>Disclosure Statement</u>"); and (ii) confirming the *Fourth Amended Plan of Liquidation of Flagship Resort Development Corporation Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No.   ] (as further modified, supplemented and amended including all attachments and exhibits thereto, the "<u>Plan</u>").

2.     <u>Effective Date of the Plan</u>. All conditions precedent to occurrence of the Effective Date of the Plan have been satisfied or waived. The Effective Date of the Plan occurred on [       ]

3.     <u>Copies of the Plan and the Confirmation Order.</u> Copies of the Confirmation Order, Disclosure Statement, the Plan, and related documents, are available free of charge at https://cases.ra.kroll.com/Flagship, or for a fee at the Court's website at http://www.njb.uscourts.gov. The Confirmation Order, Disclosure Statement, Plan, and related

---

[1] The Debtor in this case, along with the last four digits of the Debtor's federal tax identification number is: Flagship Resort Development Corporation, a New Jersey corporation (1067).  The location of the Debtor's service address is: 60 North Maine Avenue, Atlantic City, NJ 08401.

documents also are available for inspection during regular business hours in the office of the Clerk of the Court for the District of New Jersey (the "Clerk"), Mitchell H. Cohen US Courthouse 400 Cooper Street, 4th Floor Camden, NJ 08101 Courtroom 4C.

4.      Post Effective Administrative Claims. Pursuant to the Plan and the Confirmation Order, the deadline for filing proofs of claim or requests for payment of Administrative Claims ("Administrative Expense Requests") must be filed (i) on or before October 13, 2025 at 5:00 p.m. prevailing Eastern Time for any Administrative Claim (excluding Professional Fee Claims) arising on or prior to September 12, 2025 as the last date and time by which claimants holding such Administrative Claims must File Claims; and (ii) for any Administrative Claims (excluding Professional Fee Claims) arising after September 12, 2025, such Claims must be Filed by the earlier of: (a) the 15th day of the month following the month in which the Claim arose and (b) 14 days following the Effective Date (the "Post-Effective Administrative Claims Bar Date"). All Administrative Expense Requests should be filed with the Court in accordance with the terms of the Bar Date Order, Plan, and the Confirmation Order Administrative Expense Requests may not be delivered by facsimile, telecopy, or electronic mail transmission to the Clerk or the Debtor. For the avoidance of doubt, the Post-Effective Administrative Claims Bar Date shall not alter, modify, or extend any prior administrative claims bar dates established during the pendency of the Debtor's bankruptcy case, including under the Bar Date Order.

**If you are or were required to file an Administrative Expense Request pursuant to the Confirmation Order, and fail or failed to do so by the Post-Effective Administrative Claims Bar Date, your untimely Administrative Expense Claim will not be considered Allowed, and you will not be treated as a Creditor for purposes of distributions with respect to such claim(s), and you shall be entitled to no distribution under the Plan with respect to such claim(s).**

5.      Professional Fee Claims. All final requests for Payment of Professional Fee Claims must be filed and served on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court no later than thirty (30) days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; *provided*, *however*, that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order. Objections to any Professional Fee Claim must be Filed and served on the Debtor, the Plan Administrator and the requesting party no later than twenty-one (21) days from the service of an application for final allowance of a Professional Fee Claim. To the extent necessary, the Plan and the Confirmation Order shall amend and supersede any previously entered order regarding the payment of Professional Fee Claims.

6.      Rejection Bar Date. On the Effective Date, except as otherwise provided under the Plan, and except to the extent an Executory Contract or Unexpired Lease entered into by the Debtor prior to the Petition Date: (a) was assumed or rejected previously by the Debtor; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to assume Filed on or before the Effective Date; (d) is identified in the Plan Supplement to be assumed under the Plan, or (e) has been assumed and assigned to a Buyer of the Debtor's Assets, each Executory Contract

and Unexpired Lease entered into by the Debtor prior to the Petition Date shall be deemed rejected pursuant to section 365 of the Bankruptcy Code. Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Court and served on the Plan Administrator by the earlier of (a) twenty-one (21) days after service of this Notice; (b) thirty (30) days after service of notice of entry of an order of the Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease; or (c) such other date as established pursuant to *Notice of Assumption of Certain Executory Contracts and/or Unexpired Leases* [Docket No. 170] (the "Rejection Bar Date"). For the avoidance of doubt, this Rejection Bar Date shall not alter, modify, or extend any prior rejection claims bar dates established during the pendency of the Debtor's bankruptcy case. Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan with respect to such claim.

7.      Renewed Request for Post-Effective Date Notice. Pursuant to Bankruptcy Rule 2002. After the Effective Date, to continue to receive notice of documents pursuant to Bankruptcy Rule 2002, all Creditors and other parties in interest must file a renewed notice of appearance with the Bankruptcy Court requesting receipt of documents pursuant to Bankruptcy Rule 2002.

8.      Binding Nature of Plan. The Plan and its provisions are binding on the Debtor and any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired by the Plan and whether or not such holder voted to accept or reject the Plan.

Dated: September __, 2025

Respectfully submitted,

**PORZIO, BROMBERG & NEWMAN, P.C.**

By: */s/* _____ _____
Warren J. Martin, Jr., Esq. (wjmartin@pbnlaw.com)
Rachel A. Parisi, Esq. (raparisi@pbnlaw.com)
Christopher P. Mazza, Esq. (cpmazza@pbnlaw.com)

100 Southgate Parkway
P.O. Box 1997
Morristown, New Jersey 07962
(973) 538-4006
(973) 538-5146 Facsimile

*Counsel to Debtor and Debtor-In-Possession*

8289545